1 **MICHELLE BETANCOURT**
California State Bar No. 215035
2 **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
4 E-Mail: michelle_betancourt@fd.org

5 Attorneys for Cesar Ricardo Fimbres-Perez

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                     **(HONORABLE DANA M. SABRAW)**

11 UNITED STATES OF AMERICA,            )    Case No. 08CR0021-DMS
                                        )
12              Plaintiff,              )    DATE:        February 1, 2008
                                        )    TIME:        11:00 a.m.
13 v.                                   )
                                        )    STATEMENT OF FACTS AND
14 **CESAR RICARDO FIMBRES-PEREZ**,     )    MEMORANDUM OF POINTS AND
                                        )    AUTHORITIES IN SUPPORT OF
15              Defendant.              )    DEFENDANT'S MOTIONS
   _____ )

16

17                              **I.**

18                       **STATEMENT OF FACTS**

19          The following statement of facts is based, on the complaint filed on December 17, 2008.

20 Mr. Fimbres-Perez does not accept this statement of facts as his own, and reserves the right to take a contrary

21 position at motion hearings and trial.  The facts alleged in these motions are subject to amplification and/or

22 modification at the time these motions are heard.

23          On December 15, 2007, Cesar Fimbres-Perez was obsered by Agent Vito at the Border Field State

24 Park.  Agent Vito, along with Agnet Pino, made contact with Mr. Fimbres and a second person who officer

25 later identified as Miguel Fimbres-Perez.  The officers escorted Mr. Fimbres and the second individual to the

26 lower parking lot and began to conduct a records check.  Shortly after, the second person who officers identify

27 as Miguel Fimbres-Peres then began walking south toward Mexico.  Mr. Cesar Fimbres-Perez remained

28 standing in the same place.

1  The second individual eventually reached the border fence and made it over the fence.  He appears
2  to have returned to Mexico because he was not arrested on December 15, 2007.

3  On January 2, 2008, despite the fact that government counsel knew that the second individual had
4  returned to Mexico, a six count indictment was returned against Cesar Ricardo Fimbres-Perez, Miguel
5  Fimbres-Perez and Olivia Fimbres.  Mr. Cesar Fimbres is only charged in one count with  a violation of 8
6  U.S.C. § 1327.

7  These motions follow.

8  **II.**

9  **MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

10  At this time, Mr. Fimbres-Perez has received limited discovery.  Mr. Fimbres-Perez moves for the
11  production of the following discovery.  This request is not limited to those items that the prosecutor knows
12  of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any
13  "closely related investigative [or other] agencies."  See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

14  (1)  The Defendant's Statements.  The government must disclose to the defendant all copies of
15  any written or recorded statements made by the defendant; the substance of any statements made by the
16  defendant, which the government intends to offer in evidence at trial -- either in its case-in-chief or in rebuttal;
17  see id., any response by the defendant to interrogation; the substance of any oral statements, which the
18  government intends to introduce at trial, and any written summaries of the defendant's oral statements
19  contained in the handwritten notes of the government agent; any response to any Miranda warnings, which
20  may have been given to the defendant; as well as any other statements by the defendant.  Fed. R. Crim.
21  P. 16(a)(1)(A)[1].  The Advisory Committee Notes and the 1991 Amendments to Rule 16 make clear that the
22  Government must reveal all the defendant's statements, whether oral or written, regardless of whether the
23  government intends to make any use of those statements.  Federal Rule of Criminal Procedure 16 is designed
24  "to protect the defendant's rights to a fair trial."  United States v. Rodriguez, 799 F.2d 649 (11th Cir. 1986);
25  see also United States v. Noe, 821 F.2d 604, 607 (11th Cir. 1987) (reversing conviction for failure to provide
26  statements offered in rebuttal -- government's failure to disclose statements made by the defendant is a serious

27  ─────────────
28  [1]  Of course, any of Mr. Fimbres-Perez's statements, which are exculpatory, must be produced, as well.  See Brady v. Maryland, 373 U.S. 83 (1963).

1  detriment to preparing trial and defending against criminal charges). **This request includes, but is not**

2  **limited to, all recorded conversations.**

3    (2)    Arrest Reports and Notes. The defendant also specifically requests that the government turn

4  over all arrest reports, notes and TECS records not already produced that relate to the circumstances

5  surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes,

6  records, reports, transcripts, referral slips, or other documents in which statements of the defendant or any

7  other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A)

8  and Brady v. Maryland. The government must produce arrest reports, investigators' notes, memos from

9  arresting officers, sworn statements, and prosecution reports pertaining to the defendant. *See* Fed. R. Crim.

10 P. 16(a)(1)(B) and (C), 26.2 and 12(I); United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (original

11 notes with suspect or witness must be preserved); see also United States v. Anderson, 813 F.2d 1450, 1458

12 (9th Cir. 1987) (reaffirming Harris' holding).

13    (3)    Brady Material. The defendant requests all documents, statements, agents' reports, and

14 tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the

15 government's case. Kyles v. Whitley, 514 U.S. 419 (1995). Under Brady, Kyles and their progeny,

16 impeachment, as well as exculpatory evidence, falls within the definition of evidence favorable to the accused.

17 See also United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976). This

18 includes information obtained from other investigations which exculpates Mr. Fimbres-Perez.

19    (4)    Any Information That May Result in a Lower Sentence Under The Guidelines. The

20 government must also produce this information under Brady v. Maryland. This request includes any

21 cooperation, or attempted cooperation, by the defendant, as well as any information, including that obtained

22 from other investigations or debriefings, that could affect any base offense level or specific offense

23 characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant

24 to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant

25 to any other application of the Guidelines.

26    (5)    The Defendant's Prior Record. The defendant requests disclosure of his prior record.

27 Fed. R. Crim. P. 16(a)(1)(B).

28

1       (6)    <u>Any Proposed 404(b) Evidence</u>.  The government must produce evidence of prior similar acts

2 under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609.  In addition, "upon request of the

3 accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of

4 any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial and the purpose for

5 which introduction is sought.  This applies not only to evidence which the government may seek to introduce

6 in its case-in-chief, but also to evidence which the government may use as rebuttal.  <u>See</u> <u>United States v.</u>

7 <u>Vega</u>, 188 F.3d 1150 (9th Cir. 1999).  The defendant is entitled to "reasonable notice" so as to "reduce

8 surprise," preclude "trial by ambush" and prevent the "possibility of prejudice."  <u>Id.</u>; <u>United States v. Perez-</u>

9 <u>Tosta</u>, 36 F.3d 1552, 1560-61 (11th Cir. 1994).  Mr. Fimbres-Perez requests such reasonable notice at least

10 three weeks before trial, so as to adequately investigate and prepare for trial.

11       (7)    <u>Evidence Seized</u>.  The defendant requests production of evidence seized as a result of any

12 search, either warrantless or with a warrant.  Fed. R. Crim. P. 16(a)(1)(C).

13       (8)    <u>Request for Preservation of Evidence</u>.  The defendant specifically requests the preservation

14 of any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody,

15 or care of the government, and which relates to the arrest, or the events leading to the arrest, in this case.  This

16 request includes, but is not limited to, the narcotics evidence, the results of any fingerprint analysis, the

17 vehicle which the defendant was the passenger, the defendant's personal effects, any effects found within the

18 vehicle, any evidence seized from the defendant, or any third party in relation to this case, and all audio or

19 video recordings of Mr. Fimbres-Perez or any third parties related, directly or indirectly, to this case.

20       (9)    <u>Henthorn Evidence</u>.  Mr. Fimbres-Perez requests that the Assistant United States Attorney

21 assigned to this case oversee a review of all personnel files of each agent involved in the present case for

22 impeachment material.  <u>Kyles</u>, 514 U.S. at 419; <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991);

23 <u>United States v. Lacy</u>, 896 F. Supp. 982 (N.D. Ca. 1995).  At a minimum, the prosecutor has the obligation

24 to inquire of his agents in order to ascertain whether or not evidence relevant to veracity or other impeachment

25 exists.

26       (10)    <u>Tangible Objects</u>.  The defendant requests the opportunity to weigh the narcotics, to inspect

27 and copy, as well as test, if necessary, all other documents and tangible objects, including photographs, books,

28 papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the

1  defense, or intended for use in the government's case-in-chief, or were obtained from or belong to the
2  defendant. Fed. R. Crim. P. 16(a)(1)(C). Specifically, to the extent they were not already produced, the
3  defendant requests copies of all photographs in the government's possession of the vehicle, the defendants,
4  and any other photos taken in connection with this case.

5          (11)  Expert Witnesses. The defendant requests the name, qualifications, and a written summary
6  of the testimony of any person that the government intends to call as an expert witness during its case-in-chief.
7  Fed. R. Crim. P. 16(a)(1)(E). The defense requests that notice of expert testimony be provided at a minimum
8  of three weeks prior to trial, so that the defense can properly prepare to address and respond to this testimony,
9  including obtaining its own expert and/or investigating the opinions and credentials of the government's
10 expert. The defense also requests a hearing in advance of trial to determine the admissibility of qualifications
11 of any expert. See Kumho v. Carmichael Tire Co., 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper"
12 and must determine reliability and relevancy of expert testimony and such determinations may require "special
13 briefing or other proceedings . . ..").

14         (12)  Evidence of Bias or Motive to Lie. The defendant requests any evidence that any prospective
15 government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or
16 her testimony.

17         (13)  Impeachment Evidence.   The defendant requests any evidence that any prospective
18 government witness has engaged in any criminal act whether or not resulting in a conviction, and whether any
19 witness has made a statement favorable to the defendant. See Fed. R. Evid. 608, 609 and 613; Brady v.
20 Maryland.

21         (14)  Evidence of Criminal Investigation of Any Government Witness. The defendant requests
22 any evidence that any prospective witness is under investigation by federal, state or local authorities for any
23 criminal conduct.

24         (15)  Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling. The
25 defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show
26 that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and
27 any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an
28 alcoholic.

(16)    <u>Jencks Act Material</u>.  The defendant requests production in advance of trial of all material, including any tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2.  Advance production will avoid the possibility of delay at the request of the defendant to investigate the Jencks material.  A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report, or notes, to qualify as a statement under section 3500(e)(1).  <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963); <u>see also</u> <u>United States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) (holding that where an agent goes over interview notes with subject interview notes are subject to Jencks Act).

(17)    <u>Giglio Information</u>.  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witness.

(18)    <u>Agreements Between the Government and Witnesses</u>.  In this case, the defendant requests identification of any cooperating witnesses, who have committed crimes, but were not charged, so that they may testify for the government in this case.  The defendant also requests discovery regarding any express or implicit promise; understanding; offer of immunity; past, present, or future compensation; or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability between any prospective government witness and the government (federal, state and/or local).  This request also includes any discussion with a potential witness about, or advice concerning, any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

Pursuant to <u>United States v. Sudikoff</u>, 36 F.Supp.2d 1196 (C.D. Cal. 1999), the defense requests <u>all</u> statements made, either personally or through counsel, <u>at any time</u>, which relate to the witnesses' statements regarding this case, any promises -- implied or express -- regarding punishment/prosecution or detention of these witnesses, any agreement sought, bargained for, or requested on the part of the witness at any time.

(19)    <u>Informants and Cooperating Witnesses</u>.  To the extent that there was any informant, or any other tip leading to a TECS hit in this case, the defendant requests disclosure of the names and addresses of all informants, or cooperating witnesses, used, or to be used, in this case, and in particular, disclosure of any

1  informant who was a percipient witness in this case, or otherwise participated in the crime charged against

2  Mr. Fimbres-Perez.  The government must disclose the informant's identity and location, as well as the

3  existence of any other percipient witness, unknown or unknowable, to the defense.  <u>Roviaro v. United States</u>,

4  353 U.S. 53, 61-62 (1957).  The government must disclose any information derived from informants, which

5  exculpates, or tends to exculpate, the defendant.

6         (20)    <u>Bias by Informants or Cooperating Witnesses</u>.  The defendant requests disclosure of any

7  information indicating bias on the part of any informant or cooperating witness.  <u>Giglio v. United States</u>.  Such

8  information would include what, if any, inducements, favors, payments, or threats were made to the witness

9  to secure cooperation with the authorities.

10         (21)    <u>Reports of Scientific Tests or Examinations</u>.  Pursuant to Fed. R. Crim. P. 16(a)(1)(F),

11  Mr. Fimbres-Perez requests disclosure and the opportunity to inspect, copy, and photograph the results and

12  reports of all tests, examinations, and experiments conducted upon the evidence in this case, including, but

13  not limited to, any fingerprint testing done upon any evidence seized in this case, that is within the possession,

14  custody, or control of the government, the existence of which is known, or by the exercise of due diligence

15  may become known, to the attorney for the government, and that are material to the preparation of the defense

16  or are intended for use by the government as evidence in chief at the trial.

17         (22)    <u>Residual Request</u>.  Mr. Fimbres-Perez intends, by this discovery motion, to invoke his rights

18  to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution

19  and laws of the United States.  Mr. Fimbres-Perez requests that the government provide his attorney with the

20  above-requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-

21  examination.

22                                                  **III.**

23         **THE COURT SHOULD DISMISS THE INDICTMENT FOR FAILURE TO PRESENT
EXCULPATORY EVIDENCE TO THE GRAND JURY**

24

25         While it is true that there is no freestanding federal court supervisory authority to require prosecutors

26  to present exculpatory evidence under <u>United States v. Williams</u>, 504 U.S. 36, 47 (1992), where there is

27  legislative mandate to present such evidence, this Court clearly does have authority to dismiss criminal

28  indictments for misconduct relating to a failure to abide by applicable laws.  <u>Id.</u> at 46-47 (citation omitted).

1  As noted earlier, Williams rejected the defendant's claim that presentation of exculpatory evidence was

2  required, both as an exercise of supervisory power and as Fifth Amendment common law. See id. at 51-55.

3  However, federal law requires that prosecutors abide by "State laws and rules," 28 U.S.C. §530B(a). Pursuant

4  to 28 U.S.C. § 530B(a), entitled ethical standards for attorneys for the government, "[a]n attorney for the

5  Government shall be subject to State laws and rules, and local Federal Court rules, governing attorneys in each

6  State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other

7  attorneys in that State." 28 U.S.C. § 530B(a).  Prosecutors in this district are generally all members of the

8  California bar,  see Southern District of California Local Rule 83.3(c)(3(b) (requiring prosecutors to become

9  members of the California bar). Thus, under California law, subject to the "state laws and rules" set forth by

10 California lawmakers. See 28 U.S.C. § 530(B)(a).  Here in California, one need not conjure up any general

11 supervisory authority as the California lawmakers drafted section 939.71 of the California Penal Code which

12 states in pertinent part:

13       Exculpatory evidence; duties of prosecutor

14       If the prosecutor is aware of exculpatory evidence, the prosecutor *shall inform the grand
         jury* of its nature and existence.  Once the prosecutor has informed the grand jury of
15       exculpatory evidence pursuant to this section, the prosecutor shall inform the grand jury of
         its duties under Section 939.7.  If a failure to comply with the provisions of this section
16       results in substantial prejudice, it shall be grounds for dismissal of the portion of the
         indictment related to that evidence.

17

18 Cal. Pen. Code § 939.71(a) (emphasis added).  The "shall" language in § 530B(a) makes the California ethical

19 obligation to present exculpatory evidence to a grand jury binding on federal prosecutors at the United States

20 Attorney's Office for the Southern District of California.  Because the government did not  present

21 exculpatory evidence to the grand jury in this case, dismissal is warranted.

22       In Johnson v. Superior Court of San Joaquin County, 15 Cal.3d 248 (1975), the California Supreme

23 Court interpreted California Penal Code § 939.7, a precursor to the current § 939.71(a), and the obligations

24 it imposed upon prosecutors seeking indictment before a grand jury.  The court held that "when a district

25 attorney seeking an indictment is aware of evidence reasonably tending to negate guilt, he is obligated under

26 section 939.7 to inform the grand jury of its nature and existence, so that the grand jury may exercise its power

27 under the statute to order the evidence produced." Id. at 254.  The state court characterized the grand jury as

28 the "great inquest" between the prosecuting body of government and the citizen; as such, it shall "make

1   accusations only upon sufficient evidence of guilt, and to protect the citizen against unfounded accusation,

2   whether from the government, from partisan passion, or private malice." Id. To infuse the grand jury's power

3   "to protect the citizen against unfounded accusation," the court strictly read a district attorney's obligations

4   pursuant to Cal. Pen. Code § 939.7 as including the duty to "fully and fairly present" evidence to the grand

5   jury. Id. at 255.

6          In Johnson, petitioner, along with a co-defendant, were arrested for the sale of amphetamine tablets

7   to an undercover narcotics agent. Id. at 251. Before his arrest, however, the petitioner had pled guilty in

8   another drug case and received a beneficial sentencing recommendation from the government on the condition

9   that he cooperate in other drug prosecutions. Id. at 252. The petitioner argued that the district attorney failed

10  to present evidence of this agreement to the grand jury and his testimony at a preliminary hearing that he was

11  in the vicinity of the drug sale to inform on the drug dealer. Id. at 252-53. The magistrate court held that this

12  omission was fatal and dismissed the charges. Id. at 252. Based upon its interpretation of § 939.7, the

13  California Supreme Court agreed with the magistrate's resolution of the conflict.

14         Here, there was clear evidence that the person who Mr. Fimbres allegedly assisted enter the United

15  States, returned to Mexico. This information constituted material exculpatory evidence. Accordingly,

16  because the prosecutor was aware of this material exculpatory evidence, he should have so informed the grand

17  jury. Failure to do so constitutes a failure to "fully and fairly present" evidence as required pursuant to

18  California Penal Code § 939.71(a) and violates due process resulting in substantial prejudice. The Court,

19  accordingly, should dismiss the indictment.

20                                                        **IV.**

21  **THIS COURT SHOULD DISMISS COUNT ONE OF THE INDICTMENT BECAUSE IT IS
    UNCONSTITUTIONAL; IT FAILS TO ALLEGE THE ELEMENTS AND MENS REA OF THE**

22  **OFFENSE; AND/OR IT SUFFERS FROM A VARIETY OF OTHER PLEADING ERRORS**

23         Count One of the Indictment charges Mr. Fimbres-Perez with violating 8 U.S.C. § 1327 (aiding or

24  assisting certain aliens to enter). Section 1327 punishes:

25                 Any person who knowingly aids or assists any alien inadmissible under
                   section 1182(a)(2) (insofar as an alien inadmissible under such section has

26                 been convicted of an aggravated felony) or 1182(a)(3) (other than
                   subparagraph (E) thereof) of this title to enter the United States, or who

27                 connives or conspires with any person or persons to allow, procure, or
                   permit any such alien to enter the United States, shall be fined under Title

28                 18, or imprisoned not more than 10 years, or both.

1  8 U.S.C. § 1327.

2      Count One of the Indictment charges the following:

3          On or about December 15, 2008, within the Southern District of California,
   defendant CESAR RICARDO FIMBRES-PEREZ, with the intent to violate
4          the immigration laws of the United States, knowingly aided and assisted an
   defendant MIGUEL FIMBRES-PEREZ, to enter the United States, said
5          alien being excludable under Title 8, United States Code, Section
   1182(a)(2), as an alien who has been convicted of an aggravated felony, to
6          wit: voluntary manslaughter, in violation of California Penal Code 192(A);
   in violation of Title 8, United States Code, Section 1327, and Title 18,
7          United States Code, Section 2.

8  //

9  //

10  **A.**    <u>**The Court Should Dismiss Count One Because 8 U.S.C. § 1327 Is Unconstitutional**</u>.

11      **1.**    **Section 1327 Is Unconstitutionally Vague.**

12      The general principles of the void-for-vagueness doctrine make clear that § 1327 is constitutionally

13  deficient as unduly vague.  The Supreme Court has noted:

14          As generally stated, the void-for-vagueness doctrine requires that a penal
   statute define the criminal offense with sufficient definiteness that ordinary
15          people can understand what conduct is prohibited and in a manner that does
   not encourage arbitrary and discriminatory enforcement.

16

17  <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983) (striking down California statute that required loiterers to

18  provide "credible and reliable" identification to police officers).  A legislature must establish minimal

19  guidelines to govern law enforcement." <u>Id</u>. at 358 (citations omitted).  When "the legislature fails to provide

20  such minimal guidelines, a criminal statute may permit 'a standardless sweep that allows policemen,

21  prosecutors, and juries to pursue their personal predilections.'" <u>Id</u>. (citations omitted).

22      By criminalizing assisting an alien "inadmissible" under various provisions of § 1182 without

23  clarifying the meanings of inadmissibility and aggravated felony, Congress has engaged in precisely the

24  imprecise draftmanship that <u>Koender</u> proscribes.  Rather than providing even minimal guidelines as to the

25  type of conduct that it seeks to criminalize, Congress dodged its duty to define the crime in a way that

26  provides defendants constitutionally adequate notice of what behavior is proscribed by statute.  This violates

27  due process.  <u>See</u> U.S. CONST. AMEND. V.  As the Ninth Circuit has explained in the context of holding that

28  proof of knowledge of an alien's inadmissible status is not an element of § 1327, "[i]f the defendant's

1    knowledge of the reason why an alien is inadmissible is an element of section 1327, the government would

2    be required to prove that the defendant knew what was in the mind of a consular officer, the Attorney General,

3    or the Secretary of State." United States v. Flores-Garcia, 198 F.3d 1119, 1122 (9th Cir. 2000). Flores-Garcia

4    observed that proof of such elements would be all but impossible. By the same token, it is all but impossible

5    for a defendant to shape his behavior to avoid liability under § 1327 as written because the same elements are

6    equally unknowable to that individual. Not only is the conduct proscribed by § 1327 incapable of being

7    understood by an ordinary person, it is incapable of being known. See Flores-Garcia, 198 F.3d at 1122

8    (discussing the difficulty of a government attorney having to prove § 1182(a)(2)'s grounds of inadmissibility).

9    Furthermore, the provisions of § 1182 and § 1327 contain shifting legal terms of art that evade the

10   comprehension by an ordinary person at any given time. Cf. Castro-O'Ryan v. INS, 847 F.2d 1307, 1312 (9th

11   Cir. 1988) (aptly describing the "labyrinth" of immigration laws, definitions, and regulations that "only a

12   lawyer could navigate.").

13          Finally, § 1327's incorporation of §§ 1182(a)(2) & (3) is unconstitutional on its face and as applied

14   here to sustain a criminal offense. Many of the subsections of (a)(3) violate the First Amendment rights to

15   association, speech, religion, and related entitlements. See, e.g., 8 U.S.C. §§ 1182(a)(3)(A), (a)(3)(B) and

16   (a)(3)(C). Several subsections of (a)(2) are vague in violation of the Fifth and Sixth Amendments because they

17   are incapable of clear definition. The infirmities of §§ 1182(a)(2) and (a)(3) are directly incorporated by §

18   1327.

19   **B.     The Court Should Dismiss Count One Because The Government Fails To Allege A Ground**

20          **Under Which Mr. Miguel Fimbres-Perez Is Inadmissible Under 8 U.S.C. § 1182(a)(2).**

21          **1.      Introduction**.

22          An indictment must allege all of the elements of the offense sought to be charged, and must properly

23   state those elements. The Fifth Amendment requires that "[n]o person shall be held to answer for a capital,

24   or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ..." Consistent with this

25   constitutional requirement, the Supreme Court has held that an indictment must "fully, directly, and expressly,

26   without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended

27   to be punished." United States v. Carll, 105 U.S. 611, 612-13 (1881). It is black letter law that an indictment

28   that does not allege an element of the offense, even an implied element, is defective, and should be dismissed.

1 | See, e.g., Russell v. United States, 369 U.S. 749, 769-72 (1962); Stirone v. United States, 361 U.S. 212, 218-

2 | 19 (1960); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); United States v. Keith, 605 F.2d 462,

3 | 464 (9th Cir. 1979).

4 |              **2.     The Indictment Fails to Allege A Ground of Inadmissibility Under § 1182 and Misstates**
               **the Elements of the Offense.**

5 |

6 |              Section 1327 requires that the government allege two distinct elements in an indictment: (1) that the

7 | alien is inadmissible under § 1182; and (2) that the alien has been convicted of "an aggravated felony." See

8 | 8 U.S.C. § 1327.  Here, Count One of the Indictment must be dismissed because the government has failed

9 | to allege a ground under which Mr. Miguel Fimbres-Perez is inadmissible under 8 U.S.C. § 1182(a)(2).  It

10 | alleges only that Mr. Fimbres-Perez is "excludable under ... Section 1182(a)(2) ... as an alien who has been

11 | convicted of an aggravated felony."  Putting aside the issue of whether the government here even can prove

12 | that Mr.Fimres-Perez has been convicted of an "aggravated felony," conviction of an aggravated felony is not

13 | a basis of inadmissibility under § 1182(a)(2).  Because the indictment fails to allege the grounds of

14 | inadmissibility, Count One of the Indictment must be dismissed for failure to allege all of the elements of the

15 | offense.  Cf. United States v. Gomez-Rodriguez, 96 F.3d 1262 (9th Cir. 1996) (affirming district court's

16 | dismissal of indictment alleging 1326(b)(2) because of the absence of the "aggravated felony" element of the

17 | crime charged).

18 | **C.     Count Two Should Be Dismissed Unless The Government Can Prove That Mr. Fimbres-Perez**
         **Is Inadmissible Under § 1182(a)(2) And That He Is An Aggravated Felon As Required By**
19 |     **§ 1327.**

20 |              As a threshold matter, to sustain Count One against Mr. Fimbres-Perez, the government must

21 | affirmatively demonstrate pre-trial that Mr. FImbres-Perez has been convicted of an offense that qualifies as

22 | an "aggravated felony" and that he is inadmissible pursuant to § 1182(a)(2).  Otherwise, Count One of the

23 | Indictment is invalid as charged.  "Aggravated felony" is a legal term of art.  The same is true of

24 | inadmissibility under §§ 1182(a)(2) & (3).  Both must proven to state an offense under § 1327.  Without

25 | either, the charge cannot be proven.  The technical nature of these determinations makes this a preliminary

26 | issue such that a failure of proof makes further proceedings under Count 1 inappropriate.

27 | **D.     The Court Should Dismiss Count Two Because It Does Not Allege that Mr. Fimbres-Perez**
         **Knew One of the Persons He Transported Was An Aggravated Felon And Inadmissible.**

28 |

1    In Flores-Garcia, the Ninth Circuit panel held that § 1327 does not require that a defendant be aware

2    of the reason why the alien is "inadmissible."[2]  In other words, the enhanced penalties available under § 1327

3    and apparently U.S.S.G. § 2L1.1(a)(1) may be imposed without any showing that the defendant is aware that

4    the alien is inadmissible and has suffered an aggravated felony conviction.  Count Two of the Indictment must

5    be dismissed because it fails to allege that Mr. Fimbres-Perez knew the alien was an aggravated felon and

6    knew the alien was otherwise inadmissible under § 1182(a)(2).  This court should not follow the Flores-Garcia

7    decision for several reasons.

8    //

9    //

10   //

11   **1.    Case Law Supports the Application of a Statute's Mens Rea Requirement to Each Element of the Offense.**

12       In United States v. X-Citement Video, Inc., 513 U.S. 64 (1994), the Supreme Court interpreted a

13   statute, 18 U.S.C. § 2252, which criminalized the knowing transportation or receipt of visual depictions

14   involving child pornography.  The question before the Supreme Court was whether the statute required a

15   defendant to know that the visual depiction being transported or received involved child pornography.  In one

16   subsection, the statute contained language that required proof that the transportation or receipt of the visual

17   depiction be done "knowingly."  Another subsection required proof that the visual depiction "involve[]" child

18   pornography but did not specifically contain a knowledge requirement.  Nevertheless, the Supreme Court held

19   that the use of the word "knowingly" in the earlier subsection applied to the requirement in the later

20   subsection that the visual depiction "involve[]" child pornography.  In other words, the Supreme Court held

21   that the statute required that a defendant know that the visual depiction "involve[]" child pornography.

22       Section 1327 presents a much stronger case for broad application of the term "knowingly," at least

23   as a matter of structure and grammar.  By using the word "knowingly" at the beginning of the sentence and

24   by not including any language limiting its application, the term can and should be read grammatically to

25   modify each element contained in § 1327.  Otherwise, X-Citement Video's fear of criminalizing "otherwise

26

27 ──────────────

28          [2] Importantly, Flores-Garcia's holding considered only the statutory construction issue and did not pass on the constitutionality of § 1327.

1 innocent conduct" will be realized. 513 U.S. at 72 (emphasizing the need for a mens rea requirement for each

2 element of the offense).

3      **2.     The Structure of Section 1327 Does Not Support A Conclusion That A Defendant Need**
**Not Know The Basis For Inadmissibility.**

4

5      The <u>Flores-Garcia</u> panel concluded that the structure of § 1327 supports the conclusion that a

6 defendant need not know the basis for inadmissibility for two reasons: (1) if there were a mens rea

7 requirement, the government would, on occasion, have to prove that the defendant was aware of the state of

8 mind of various government officials as to terrorist and other dangerous aliens[3]; and (2) the variety of aliens

9 covered by the statute supports the notion that Congress was more concerned with the threat posed by the

10 aliens rather than the mens rea of the person assisting them. <u>Flores-Garcia</u>, 198 F.3d at 1122. Neither of these

11 considerations are sufficient to overcome the presumption of mens rea for each element of charge and, even

12 if there is no presumption, they are not sufficiently probative to forestall application of the Rule of Lenity.

13      In sum, the mens rea requirement clearly should apply to the elements that the alien is inadmissible

14 and is an aggravated felon. But, even assuming ambiguity, the Rule of Lenity applies, and the statute should

15 be construed in favor of Mr. Fimbres-Perez. <u>See</u> <u>Ladner v. United States</u>, 358 U.S. 169 (1958).

16                                                    **V.**

17                            **MOTION TO PRODUCE GRAND JURY TRANSCRIPTS**

18      Mr. Fimbres-Perez hereby moves this Court to compel the government to produce all grand jury

19 transcripts in this case. <u>See</u> U.S. CONST. AMENDS. V, VI. The Supreme Court has found that "[t]he grand jury

20 is an integral part of our constitutional heritage which was brought to this country with the common law. The

21 Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee

22 of individual liberty . . . the grand jury continues to function as a barrier to reckless or unfounded charges.

23 'Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the

24 high place it held as an instrument of justice.' <u>Costello v. United States</u>, 350 U.S. 359, 362 (1956). Its historic

25 office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal

26 accusations will be brought only upon the considered judgment of a representative body of citizens acting

27 ────────────────

28      [3] As argued <u>supra</u>, this supports Mr. Fimbres-Perez's argument that § 1327 is
unconstitutional.

1 under oath and under judicial instruction and guidance." <u>United States v. Manduano</u>, 425 U.S. 564, 571

2 (1976).  In order to ensure that the criminally accused are safeguarded from reckless and unfounded charges,

3 judges must take their duty to provide guidance seriously and not simply pay lip service to the assurances of

4 the government.

5       Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) allows disclosure "at the request of a defendant

6 who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the

7 grand jury."  Given the arguments raised above, it is clear that "a ground may exist to dismiss the indictment

8 because of a matter that occurred before the grand jury." Fed. R. Crim. P 6(e)(3)(E)(ii).  Here, dismissal of

9 Count One would be appropriate if the grand jury was not properly advised of the definition of "aggravated

10 felony" or the basis for which Mr. Fimbres-Perez was allegedly inadmissible under section 1182(a).  If the

11 grand jury was not properly instructed, then a ground would exist to dismiss the indictment.  Accordingly,

12 because a ground may exist to dismiss the indictment, release of the grand jury transcripts is appropriate in

13 this case.

14 //

**VI.**

**<u>MOTION TO COMPEL THE GOVERNMENT</u>**
**<u>TO PROVIDE A BILL OF PARTICULARS</u>**

18       If this Court denies Mr. Fimbres-Perez' above motions to dismiss the indictment, then he hereby

19 moves this Court to direct the government to file a bill of particulars.  <u>See</u> Fed. Rule Crim. Pro. 7(f).  A bill

20 of particulars is warranted where it will enable adequate preparation of the defense and prevent surprise at

21 trial. <u>United States v. Giese</u>, 597 F.2d 1170, 1180 (9th Cir. 1979).  A bill of particulars provides a defendant

22 with the details of the charges necessary to present a defense, to avoid prejudicial surprise at trial, and to

23 protect against a second prosecution based on the same facts. <u>See United States v. Cecil</u>, 608 F.2d 1294, 1296

24 (9th Cir. 1979) (noting also that a bill of particulars ensures that the defendant is tried on the basis of facts

25 presented to a grand jury).  Mr. Fimbres-Perez has rights under the Fifth and Sixth Amendments and Fed. R.

26 Crim. P. 7(f) to notice of the charges against him and to a fair trial with an opportunity to defend himself

27 against the charges.  In addition, a bill of particulars guarantees a defendant's Fifth Amendment right to be

28 tried on a charge found by a Grand Jury, as a defendant is entitled to know the Government's theory as to a

15

1    particular count.  See Yeargain v. United States, 314 F.2d 881, 882 (9th Cir. 1963).  This is true even where

2    the indictment states all the ingredients of the offense.  Myers v. United States, 15 F.2d 977, 983 (8th Cir.

3    1926) ("The office of a bill of particulars attaches without distinction, where the indictment states all the

4    ingredients of the offense and further detail may be required or demanded for the protection of the

5    defendant").  See also United States v. Thompson, 189 F. 838, 839 (W.D.Va. 1911) ("An indictment may be

6    so expressed as to be good on demurrer and which still does not give the defendant all the information which

7    he should in fairness have in order to properly prepare for trial, and in such case the defects in the indictment,

8    in Federal practice, may be overcome by a bill of particulars").  Here, the government has not alleged in the

9    indictment the grounds of Mr. Fimbres-Perez's alleged inadmissibility under § 1182(a)(2).  The government

10   also has not alleged how Mr. Fimbres-Perez's conviction under California Penal Code § 192(A) qualifies as

11   an "aggravated felony."  Accordingly, at a minimum, this Court should direct the government to file a bill of

12   particulars that provides information regarding the precise grounds that makes him inadmissible under § 1182.

13   //

14   //

15                                              **VII.**

16                        **REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

17           Mr. Fimbres-Perez and defense counsel have not received any discovery.  If and when discovery is

18   provided, defense counsel may find it necessary to file further motions, or to supplement existing motions

19   with additional facts.  The denial of this motion will result in a violation, at a minimum, of Mr. Fimbres-

20   Perez's Fifth and Sixth Amendment rights.  Therefore, defense counsel requests the opportunity to file further

21   motions based upon information gained from discovery.

22                                              **VIII.**

23                                        **CONCLUSION**

24           For the reasons stated above, Mr. Fimbres-Perez moves this Court to grant his motions.

25                                        Respectfully submitted,

26

27   DATED:        January 18, 2008            /s/ Michelle Betancourt
                                               **MICHELLE BETANCOURT**
28                                             Federal Defenders of San Diego, Inc.
                                               Attorneys for Mr. Cesar Ricardo Fimbres-Perez