**MICHELLE BETANCOURT**
California State Bar No. 215035
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California  92101-5008
Telephone No. (619) 234-8467

Attorneys for Mr. Cesar Fimbres

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE DANA M. SABRAW)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>CESAR RICARDO FIMBRES (1), )<br><br>Defendant. )<br><br>_____ ) | Criminal No. 08CR0021-DMS<br><br>Date:  March 14, 2008<br>Time: 11:00 a.m.<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO DISQUALIFY DEFENSE COUNSEL** |

**I.**

**INTRODUCTION**

On March 4, 2008, the government filed a motion to disqualify Mr. Cesar Fimbres' counsel, asserting a conflict of interest.  The government ignores key facts that determine the relevant test to be applied, and drive the analysis.  Relatedly, the government:  (1) ignores important standing concerns; (2) does not apply the appropriate test -- or any test -- for determining if there is a disqualifying conflict; and (3) does not adequately address how Mr. Cesar Fimbres' interests are adverse to defense counsel's former client, Miguel Fimbres, the only potential avenue to establish a disqualifying conflict here.  Each of these points is addressed below.

//

//

//

## II.

## THERE IS NO DISQUALIFYING CONFLICT

As mentioned in the introduction, the government ignores important facts.  Most important, the government ignores the fact that Federal Defenders' representation of Mr. Garcia-Hernandez has terminated.  Given this, the conflict claim is based on successive, not simultaneous, representations.  Applying the conflict test for successive representations, it is clear the government's motion is baseless.  Moreover, as a preliminary matter, the government's standing to raise this issue is, at best, very limited.  In particular, because Mr. Miguel Fimbres is not yet in custody.

**A.    The Government Has, At Best, Limited Standing, And Any Cognizable Interest The Government Has Can Be Satisfied By Ms. Lexin Submitting A Declaration Waiving Any Potential Conflict**

"As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification."  Kasza v. Browner, 133 F.3d 1159, 1171 (9th Cir. 1998) (quotation omitted, emphasis added).  In Kasza, the Ninth Circuit stated that it had "difficulty seeing how [the party that moved for disqualification] ha[d] standing to complain about a possible conflict of interest arising out of common representation of defendants in different civil actions, having nothing to do with her own representation."  Id.

This approach to standing should be strictly enforced, given that oftentimes conflicts are raised for tactical reasons.  As the Supreme Court noted in Wheat v. United States,[1] 486 U.S. 153, 163 (1988), "the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side; but trial courts are undoubtedly aware of this possibility, and must take it into consideration along with all the other factors which inform this sort of a decision."  California courts have expressed the same types of concerns.  See Elliott v. McFarland Unified School Dist., 165 Cal. App. 3d 562, 570 (1985) ("disqualification has an immediate adverse effect on the client by separating him from counsel . . . and . . . disqualification motions are often interposed for tactical reasons"); H.F. Ahmanson & Co. v. Salomon Bros., 229 Cal. App. 3d 1445, 1454 (1991) ("It must be recognized that disqualification motions

---

[1]    The government puts great weight on Wheat.  As discussed below, because that case deals with *simultaneous* representation of three defendants in the same criminal case, the government's reliance is misplaced.

08CR0021-DMS

1   based on an alleged substantial relationship between representations are commonly used for purely strategic

2   purposes to delay litigation, harass the opposing party or pressure for a more favorable settlement").[2]

3          While Mr. Cesar Fimbres is not accusing the government of such ulterior motives, the potential for

4   abuse militates toward close scrutiny of the government's standing.  In this regard, it is important to consider

5   what, if any, legitimate interest the government asserts, which determines the scope of its standing.  See Lujan

6   v. Defenders of Wildlife, 504 U.S. 555, 559-62 (1992).  The Lujan standing test seems to indicate the

7   government does not have standing to bring its motion to disqualify.[3]  However, giving the government the

8   benefit of the doubt, the only potentially cognizable interest the government has is in assuring any conviction

9   of Mr. Cesar Fimbres cannot later be attacked based on a conflict claim.  There is a practical solution to that

10  concern:  Mr. Fimbres waiving any potential conflict of interest.  As the Ninth Circuit has stated, "[o]f course,

11  a defendant may waive his right to assistance of an attorney who is unhindered by conflicts, [Holloway v.

12  Arkansas, 435 U.S. 475, 483 n.5 (1978)], provided the waiver is given knowingly and intelligently."  United

13  States v. Allen, 831 F.2d 1487, 1494 (citing Edwards v. Arizona, 451 U.S. 477, 482 (1981)).

14         The government may claim it wants to look out for Mr. Miguel Fimbres' interests.  There are three

15  problems with this:  (1) the government has no standing; (2) the challenges to his status as an aggravated felon

16  by Mr. Cesar Fimbres would be the same as his own; (3) Mr. Miguel Fimbres is not threatened with any of

17  his confidences being revealed; and most importantly, (4) Mr. Miguel Fimbres has not been arrested in

18  connection with this case.  The government has ignored the first two points, and rejected the last two without

19  explanation.

20  //

21  //

22  //

23

24         [2]     Given these, and other, concerns, Ms. Lexin disagrees with the government's

25  claim that disqualifying her appointed counsel is without any constitutional import.  See 5/30/07
    Gov't Memo at 6-7.  However, because the merits are so strongly in her favor, she has not briefed

26  that issue.

27         [3]     For the government, the problematic aspect of the standing test set out in Lujan is

28  that the government must show it is faced with "actual or imminent injury," not injury which is
    "conjectural or hypothetical."  504 U.S. at 560.  Given the circumstances, there is not any
    prospect of injury to the government.

**B.    Given That The Government Is Moving For Disqualification Based On Successive Representations, The Appropriate Test Is Whether: (1) Ms. Betancourt's Representation Of Mr. Cesar Fimbres Is "Adverse" To Mr. Miguel Fimbres; And (2) Ms. Betancourt, By Reason Of Federal Defenders' Prior Representation Of Mr. Miguel Fimbres, Obtained Confidential Information Material To Her Representation Of Mr. Cesar Fimbres.**

Given that the government's claim must be based on successive representation, there are two key questions: (1) is Ms. Betancourt's representation of Mr. Cesar Fimbres adverse to Mr. Miguel Fimbres; and (2) did Ms. Betancourt, by reason of Federal Defenders' prior representation of Mr. Miguel Fimbres, obtain confidential information material to her representation of Mr. Cesar Fimbres. The answer to both questions is no. However, the government never engages in this analysis, instead makes bold assertions that are not supported in the law.

**1.    California Rules Of Professional Conduct Govern, But Relevant Ninth Circuit Case Law Is In Accord**

As set out in the local rules, the California Rules of Professional Conduct govern attorneys who practice in this district. <u>See</u> Civil Local Rule 83.4(b); <u>see also</u> <u>Dieter v. Regents of Univ. of Cal.</u>, 963 F. Supp. 908, 910 (E.D. Cal. 1997) ("The Eastern District of California applies the Rules of Professional Conduct of the State Bar of California"); <u>Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.</u>, 809 F. Supp. 1383, 1387 (N.D. Cal. 1992) (same for Northern District of California). Under California law, those rules apply in civil and criminal cases. <u>See</u> <u>People v. Thoi</u>, 213 Cal. App. 3d 689, 699 (1989) (citation omitted). The California rule implicated by the government's motion to disqualify provides, in relevant part:

Rule 3-310.  Avoiding the Representation of Adverse Interests.

\* \* \*

(E)   A member shall not, without the informed written consent of the client or former client, accept employment <u>adverse</u> to the client or former client where, <u>by reason of the representation</u> of the client or former client, the member <u>has obtained confidential information material to the employment</u>.

(Emphasis added.)  Accordingly, the government's disqualification motion raises two questions: (1) is Ms. Betancourt's representation of Mr. Cesar Fimbres "adverse" to Mr. Miguel Fimbres; and (2) by "reason of" Federal Defenders' prior representation of Mr. Miguel Fimbres, did Ms. Betancourt "obtain[] confidential information material to" her representation of Mr. Cesar Fimbres. However, to avoid forcing former clients who allege a conflict from disclosing confidential information, and in light of proof problems, the "obtained confidential information" aspect of the rule can sometimes be presumptively satisfied if "there is a 'substantial

1  relationship' between the current and former representations."[4] <u>Elan Transdermal Ltd. v. Cygnus Therapeutic</u>

2  <u>Sys.</u>, 809 F. Supp. 1383, 1388 (N.D. Cal. 1992) (citing <u>Civil Service Comm. v. Superior Court</u>, 163 Cal. App.

3  3d 70, 80 (1984)).  Of course, even if both prongs of the test are met, a former client can give written consent

4  to the subsequent representation.

5          Below, the successive representations test is applied to the facts of this case, although there is some

6  question as to whether the "substantial relationship" presumption is appropriate when assessing a conflict

7  relating to a public defender.  However, before addressing Rule 3-310's test, Mr. Cesar Fimbres first addresses

8  the government's flawed approach to the conflict issue.

9          **2.      The Government's Argument Regarding Simultaneous Representation is Inapplicable**

10         Although this is a case of successive representations, the government repeatedly cites, without much

11  analysis, cases that deal with simultaneous representations.  <u>See, e.g.</u>, <u>Wheat</u>, 486 U.S. at 154-56 (attorney

12  sought to represent three defendants in same matter).  The tests in that context, and the reasons behind that

13  test, is starkly different.  "Generally, its is more difficult to show an actual conflict resulting from successive

14  rather than simultaneous representation."  <u>Manhalt v. Reed</u>, 847 F.2d 576, 580 (9th Cir. 1988).

15         The California Rule of Professional Conduct dealing with simultaneous representations makes clear

16  that it is concerned with far more than protecting a past client's confidences:

17         (B) A member shall not, without the informed written consent of each client:

18              (1) Accept representation of more than one client in a matter in which the
                interests of the clients potentially conflict; or
19
                (2) Accept or continue representation of more than one client in a matter in
20              which the interests of the clients actually conflict; or

21              (3) Represent a client in a matter and at the same time in a separate matter
                accept as a client a person or entity whose interest in the first matter is
22              adverse to the client in the first matter.

23  Cal. Rule Prof. Conduct 3-310(B).  Thus, unlike Rule 3-310(E), which deals with successive representations,

24  this Rule does not focus on preserving client confidences.

25

26

27         [4]      Incidentally, Ninth Circuit case law regarding disqualification in successive

28  representation cases is the same as California law.  <u>See, e.g.</u>, <u>Elan Transdermal Ltd. v. Cygnus</u>
    <u>Therapeutic Sys.</u>, 809 F. Supp. 1383, 1388 n.8 (N.D. Cal. 1992) (citing <u>Trone v. Smith</u>, 621 F.2d
    994, 998 (9th Cir. 1980), relied on by the government for the successive representations test).

1    In Flatt v. Superior Court, 9 Cal. 4th 275 (1994), the Supreme Court of California described the

2  difference between the two tests, and the reasons motivating them.  First, with respect to successive

3  representations, the court said:

4       Where the potential conflict is one that arises from the *successive* representation of clients
        with potentially adverse interests, the courts have recognized that the chief fiduciary duty
5       value jeopardized is that of client *confidentiality*.  Thus, where a former client seeks to have
        a previous attorney disqualified from serving as counsel to a successive client in litigation
6       adverse to the interests of the first client, the governing test requires that the [former] client
        demonstrate a "substantial relationship" between the subjects of the antecedent and current
7       representations.

8  Id. at 283.  Contrasting successive representations with simultaneous representations, the court said:

9       Both the interest implicated and the governing law are different, however, where an
        attorney's potentially conflicting representations are *simultaneous*.  In such a situation . .
10      . the courts have discerned a distinctly separate professional value to be at risk by the
        attorney's adverse representations.  The primary value at stake in cases of simultaneous or
11      dual representation is the attorney's duty -- and the client's legitimate expectation -- of
        *loyalty*, rather than confidentiality.  And because the substantial relationship test is founded
12      on the need to protect against the improper use of client *secrets* -- a concern that often is
        not implicated by the simultaneous representation of clients in *unrelated* matters -- and
13      applies "where the representation of a former client has been terminated and the parameters
        of such relationship . . . fixed," such a test "does not set a sufficiently high standard by
14      which the necessity for disqualification should be determined" in cases involving dual
        representation.

15
        In evaluating conflict claims in dual representation cases, the courts have accordingly
16      imposed a test that is more stringent than that of demonstrating a substantial relationship
        between the subject matter of successive representations. . . .  Indeed, in all but a few
17      instances, the rule of disqualification in simultaneous representation cases is a *per se* or
        "automatic" one.

18

19  Id. at 284 (quotations omitted); see also United States v. Koon, 34 F.3d 1416, 1437 (9th Cir. 1994) (same),

20  reversed on other grounds, 518 U.S. 81 (1996).[5]

21      The government's position seems to be that, regardless of whether the court is presented with

22  simultaneous or successive representations, Ms. Betancourt, and all the attorneys at Federal Defenders, are

23  forever barred from taking contradictory legal positions in different cases.  [Gov't Mtn at 12].  The

24  government does not provide a cite for that bold claim, nor can it.[6]  That is because, as the Ninth Circuit said,

25

26      [5]    The different approaches to simultaneous versus successive representation are also
        evidenced by Federal Rule of Criminal Procedure 44(c), which specifically instructs courts to
27      inquire about joint representation (*i.e.*, a type of simultaneous representation).  There is no
        analogous rule with respect to successive representations.

28
        [6]    Imagine the chaos if such a rule applied to the United States Attorney's Office, or
        the Department of Justice, which routinely take conflicting positions in different cases.

08CR0021-DMS

1  "[l]awyers, all know, may change their position on the law from case to case without disgrace." <u>United States</u>

2  <u>v. Stites</u>, 56 F.3d 1020, 1025 (9th Cir. 1995).  Moreover, "nothing in [Rule 3-310(E)] prohibits an attorney

3  from accepting employment adverse to a former client if the matter has no relationship to confidential

4  information acquired by reason of or in the course of [the attorney's] employment by the former client." <u>In</u>

5  <u>re Charles L.</u>, 63 Cal. App. 3d 670, 763-64 (1976) (discussing predecessor to Rule 3-310(e)); <u>see also</u> <u>Kasza</u>

6  <u>v. Browner</u>, 133 F.3d 1159, 1171 (9th Cir. 1998) ("conclusory charge of institutional conflict of interest" isn't

7  sufficient to warrant disqualification).

8          Thus, while Mr. Cesar Fimbres will likely challenge every element of the charged offense despite

9  Mr. Miguel Fimbres' prior admissions, Ms. Betancourt is not barred from doing so on behalf of Mr. Cesar

10  Fimbres.

11          **3.      Defense Counsels' Representation Of Mr. Cesar Fimbres Is Not Adverse To Mr.**

12                    **Miguel Fimbres**

13          Defense counsel's representation of Mr. Cesar Fimbres is not adverse to Mr. Miguel Fimbres . It is

14  safe to assume that Mr. Miguel Fimbres, if and when arrested, will vehemently challenge the alleged

15  aggravated felony.  It is unlikely that Mr. Miguel Fimbres would suffer any harm by the fact that his co-

16  defendant, Mr. Cesar Fimbres, challenged his status as an alleged aggravated felon or as an alleged alien.  But

17  more importantly, Mr. Miguel Fimbres has not been arrested and therefore is not present to suffer any harm.

18          Accordingly, defense counsels' representation of Ms. Lexin is not in any way adverse to Mr. Garcia-

19  Hernandez.

20          **4.      Ms. Betancourt Did Not, By "Reason Of" Federal Defenders' Representation Of Mr.**

21                    **Miguel Fimbres, "Obtain[] Confidential Information Material To" Her Representation**

                      **Of Mr. Cesar Fimbres, Nor Can Such Be Presumed Based On A Substantial**

22                    **Relationship Between The Two Cases**

23          Ms. Betancourt did not, by "reason of" Federal Defenders' representation of Mr. Miguel Fimbres

24  "obtain[] confidential information material to" her representation of Mr. Cesar Fimbres.  Moreover, the

25  "substantial relationship" test, even if applicable, does not warrant a contrary presumption.

26  //

27  //

28  //

1            **a.    Ms. Betancourt Did Not Obtain Confidential Information, Material To Mr. Cesar Fimbres' Defense, By Reason Of Federal Defenders' Representation Of Mr. Miguel Fimbres**

2

3        As a matter of fact -- not legal presumption -- Ms. Betancourt did not, by "reason of" Federal

4  Defenders' prior representation of Mr. Miguel Fimbres, "obtain[] confidential information material to" her

5  representation of Mr. Cesar Fimbres.  Cal. Rule Prof. Conduct 3-310(E); Dec. of Michelle Betancourt (Exhibit

6  A).   In Mr. Miguel Fimbres' case, defense counsel first became aware of Federal Defenders' prior

7  representation after reviewing the discovery provided by the government.  No confidential information was

8  gained on the  part of defense counsel.  Ms. Betancourt has not reviewed Mr. Miguel Fimbres' file.  The

9  information challenged thus far comes from the indictment and the public records made available by the

10  government.  There is no need for Ms. Betancourt to review Mr. Miguel Fimbres' file.

11            **b.    There Is No Substantial Relationship Between The Two Cases**

12        The government is left with having to demonstrate a substantial relationship between Mr. Miguel

13  Fimbres' previous case and this case, such that the Court will presume that Ms. Betancourt, by "reason of"

14  Federal Defenders' prior  representation of Mr. Miguel Fimbres, "obtained confidential information material

15  to" her representation of Mr. Cesar Fimbres.  However, as an initial matter, it is not clear the Court should

16  apply such a presumptive test, given that Ms. Betancourt is a public defender.

17            **i.    Disqualifying Presumptions Should Not Be Applied To Public Sector Lawyers**

18

19        In People v. Christian, 41 Cal. App. 4th 986, 998 (1996), the court said "courts should not assume

20  the existence of conflicts of interest in the public sector absent evidence of any conflict, and should attempt

21  to limit the reach of disqualification in such cases whenever possible."  The court noted that, "[a]lthough

22  conflict rules clearly apply both to private and public sector attorneys, they appear to have been drafted with

23  private attorneys primarily in mind. . . .  There are certain distinctions between these two types of practices --

24  public and private -- that are relevant to our analysis.  In particular, the financial incentive, often present in

25  private practice, to favor a more important client over a lesser one is not an issue for the [public defender or

26  alternate public defender], given that they are government-funded offices performing services for indigent

27  clients."  Id. at 997.  Given the lack such a corrupting incentive, and the increased public expense that can

28  result from disqualification of public defenders, the court indicated that disqualification should only proceed

where there is actual, rather than presumptive, evidence of a conflict.  See also San Diego County of Soc.

1  Serv. v. Diane G., 1 Cal. App. 4th 17, 28 (1991) ("Disqualifications of public counsel can result in increased

2  public expenditures for legal representation, and there is the potential for substantially increased call upon an

3  already severely strained tax base. . . .  Where only speculative or minimal benefit would be obtained by

4  disqualification of public counsel, the dislocation and increased expense of government is not justified")

5  (quotations and citations omitted).

6           Another recent California case reiterates the same points made in Christian.  In Rhaburn v. Superior

7  Court, 140 Cal. App. 4th 1566, 1575-1579 (2006), the court surveyed a number of recent cases involving

8  motions to disqualify public defenders, and rejected a rigid rule of presumptive disqualification.  Specifically,

9  the court noted that the approach in the suerveyed cases was "inconsistent with the rigid rule in civil cases that

10  presumes the possession of confidential information [by applying the 'substantial relationship' test] and turns

11  a deaf ear to counsel's protestations that he does not in fact posses any such information." Id. at 1578.  The

12  court concluded that "the Supreme Court's focus on the factual issue of whether actual or potential conflict

13  existed in the Clark line of cases strongly suggests that a different approach is appropriate in the criminal

14  context." Id.  The court supported this conclusion with several of the points with respect to public defender

15  offices set out by the court in Christian:  lack of a financial incentive to favor one client over another; cost;

16  and high caseloads.  See id. at 1579-80.  Accordingly, the court held that courts considering successive

17  representation conflict claims should give great weight to whether a public defender asserts he has obtained

18  no material confidential information as a result of the former representation.  See id. at 1581.  This amounts

19  to at least a partial repudiation of the "substantial relationship" test.  Moreover, given Ms. Betancourt's

20  declaration to the effect that she obtained no material confidential information from Federal Defenders' prior

21  representation of Mr. Miguel Fimbres (Exhibit A), there is no conflict.

22           And most recently, in People v. Paredes, 158 Cal. App. 4th 1516 (2008), the California Court of

23  Appeals  found that the trial court abused its discretion in removing the public defender's office even though

24  the key witness against their client was a former client finding that the trial court improperly applied a per se

25  rule of disqualification based on the mere possibility or appearance that the public defender had a conflict of

26  interest.  Id. at 172.

27           In conclusion, the logical import of Christian, Diane G., Rhaburn and Paredes is that presuming a

28  disqualifying conflict based on the "substantial relationship" test is inappropriate when the alleged conflict

1  involves a public defender.  The holdings in <u>Christian</u> and <u>Diane G.</u> are particularly compelling, as both cases

2  dealt with simultaneous representations, a context in which courts are much more inclined to find a

3  disqualifying conflict.

4          c.      **There Is No Substantial Relationship Between The Two Cases**

5          However, even if the test applies here, there is no "'substantial relationship' between the current and

6  former representations."

7          In <u>H.F. Ahmanson & Co. v. Salomon Bros.</u>, 229 Cal. App. 3d 1445 (1991), the court noted that in

8  applying this test, courts should take a "pragmatic approach," disqualifying only "when it appears by nature

9  of the former representation or the relationship of the attorney to his former client confidential information

10  material to the current dispute would normally have been imparted to the attorney." <u>Id.</u> at 1454 (quotation

11  omitted).  The court in <u>H.F. Ahmanson</u> reiterated that the "substantial relationship test is intended to protect

12  the confidences of former clients when an attorney has been in a position to learn them.  Therefore, to apply

13  the remedy of disqualification when there is not a realistic chance that confidences were disclosed would go

14  <u>far beyond</u> the purpose of the substantial relationship test." <u>Id.</u> at 1455 (quotations omitted, emphasis added).

15  The crux of the matter is whether "there is a substantial risk that the present representation will involve the

16  use of confidential information acquired in the course of the prior representation." <u>Faughn v. Perez</u>, 145 Cal.

17  App. 4th 592, 605 (2006).

18          The government cannot credibly argue that the Court should presume that Federal Defenders',

19  specifically Mr. Petrik who is no longer with the office, prior representation of Mr. Miguel Fimbres in his

20  illegal entry case, Ms. Betancourt obtained confidential information that will be material to representing Mr.

21  Fimbres, who is charged with aiding the illegal entry of an aggravated felon.  Although there is a relationship,

22  it is not substantial.  The crux of Mr. Cesar Fimbres' case that involves Miguel Fimbres is a purely legal

23  question and but one of the three elements Mr. Cesar Fimbres will challenge.

24          **5.      Even Assuming An Adverse Interest, And A Substantial Relationship Between The
              Two Cases, The Former Client May Waive Any Conflict**

25

26          Even assuming Mr. Cesar Fimbres' interests are adverse to Mr. Miguel Fimbres', and that there is a

27  substantial relationship between the two cases, Mr. Miguel Fimbres may waive any potential conflict.  <u>See</u>

28  Cal. Rule Prof. Conduct 3-310(E) ("without the informed written consent of the client or former client");

1 | <u>Diane G.</u>, 1 Cal. App. 4th at 27 ("disqualification is unnecessary where the client expressly or impliedly

2 | consents to the adverse representation") (quotation and citation omitted). If, and when, he is arrested, he will

3 | have the opportunity to waive the potential conflict.

4 | **III.**

5 | <u>**CONCLUSION**</u>

6 | Based on the stated reasons, the Court should deny the government's motion to disqualify.

7 | Respectfully submitted,

8 |  /s/ Michelle Betancourt

9 | Date: March 12, 2008 **MICHELLE BETANCOURT**
Federal Defenders of San Diego, Inc.

10 | Attorneys for Mr. Cesar Fimbres