1 | KAREN P. HEWITT
United States Attorney
2 | CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney
3 | California Bar. No. 201352
Federal Office Building
4 | 880 Front Street, Room 6293
San Diego, California 92101-8893
5 | Telephone: (619) 557-7425 /(619) 235-2757 (Fax)
Email: Christopher.M.Alexander@usdoj.gov
6
Attorneys for Plaintiff
7 | United States of America

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 10 | UNITED STATES OF AMERICA ) | Criminal Case No. 08CR0021-DMS |
| 11 | Plaintiff, ) | HEARING DATE:   April 30, 2008 |
|    |                ) | TIME:                    1:30 p.m. |
| 12 |                ) | |
|    | v.             ) | UNITED STATES' RESPONSE TO |
| 13 |                ) | DEFENDANT'S MOTIONS: |
| 14 |                ) | (1) COMPEL DISCOVERY/PRESERVE |
|    | CESAR RICARDO FIMBRES-PEREZ (1), ) |     EVIDENCE; |
| 15 | OLIVIA FIMBRES-PEREZ (2), ) | (2) DISMISS DUE TO FAILURE TO |
|    | MIGUEL FIMBRES-PEREZ (3), ) |     PRESENT; |
| 16 |                ) | (3) DISMISS COUNT ONE; |
|    | Defendants. ) | (4) TO PRODUCE GRAND JURY |
| 17 |                ) |     TRANSCRIPTS; |
|    |                ) | (5) TO COMPEL A BILL OF |
| 18 |                ) |     PARTICULARS; |
|    |                ) | (6) FOR LEAVE TO FILE FURTHER |
| 19 |                ) |     MOTIONS. |
| 27 |                ) | TOGETHER WITH STATEMENT OF FACTS, |
|    |                ) | MEMORANDUM OF POINTS AND |
| 28 | _____ ) | AUTHORITIES |

COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Christopher M. Alexander, Assistant United States Attorney, and hereby files its Response and Opposition to Defendants' above-referenced motions. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On January 2, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Defendant Cesar Ricardo Fimbres-Perez ("Cesar Fimbres") in Count One with aiding the entry of an alien with a prior aggravated felony conviction into the United States in violation of 8 U.S.C. § 1327; Defendant Olivia Fimbres ("Olivia Fimbres") was charged in Counts Two and Three with assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1) and charged in Count Six with aiding the escape of Miguel Fimbres-Perez in violation of 18 U.S.C. § 751(a); and Defendant Miguel Fimbres-Perez ("Miguel Fimbres") was charged in Count Four with assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1) and charged in Count Five with being a deported alien attempting to enter the United States after deportation in violation of 8 U.S.C. § 1326 (collectively, "Defendants"). On January 3, 2008, Defendants Cesar Fimbres and Olivia Fimbres were arraigned on the Indictment and entered not guilty pleas. Defendant Miguel Fimbres is a fugitive. The Court set a motion hearing date for February 1, 2008.

On January 17, 2008, Defendant Olivia Fimbres filed a motion to compel discovery. On January 18, 2008, Defendant Cesar Fimbres filed motions to compel discovery, dismiss, compel production of the grand jury transcripts, and for a bill of particulars.

On February 1, 2008, the Court continued the matter to February 15, 2008 so that the Parties could address discovery issues. On February 15, 2008, the United States raised the issue of a conflict of interest. The Court requested briefing. On March 14, 2008, the Court declined to relieve Federal Defenders. Additionally, the Court denied Defendant Cesar Fimbres' motion to produce grand jury transcripts.

1    Shortly thereafter, Defendant Cesar Fimbres filed a motion to sever. The United States did not
2 oppose this request. The Court granted severance on April 18, 2008. The Court eventually set a motion
3 in limine date of April 30, 2008 and a trial date of May 5, 2008. The United States now responds to
4 Defendant's remaining motions.

**II**

**STATEMENT OF FACTS**

**A.    THE APPREHENSION**

8    On December 15, 2007, Border Patrol Agents Luis Ramos and Eric Vito were assigned to an area
9 known as Whiskey 15 position at the Imperial Beach area of operations. Border Patrol Agent Leslie H.
10 Pino was assigned to the plainclothes Rapid Engagement Support Enforcement Team ("RESET") and
11 was also working in the Whiskey 15 area. All three agents were at Border Field State Park observing
12 a Border Angels rally.

13    The Whiskey 15 area and Border Field State Park are approximately five miles west of the San
14 Ysidro Port of Entry and adjacent to the United States/Mexico International border. The western border
15 of the Whiskey 15 area and Border Field State park is the Pacific Ocean.

16    At approximately 5:30 p.m., Agent Ramos observed two individuals enter into the United States
17 without inspection. The two individuals walked a few yards into the United States and then returned
18 to Mexico. The two individuals repeated their actions twice before illegally entering a third time and
19 continuing northbound along the shoreline. Agent Ramos observed that one of the individuals was
20 wearing a yellow striped jacket. Agent Ramos relayed this information via agency radio to Agent Vito
21 and continued to observe the two individuals walking up the beach.

22    Agent Vito responded to the shoreline to intercept the two individuals but his vehicle became
23 disabled about ten yards north of the United States/Mexico International Boundary. Agent Vito then
24 responded to the two individuals on foot and encountered them directly west of the Border Field State
25 park lower parking lot. The parking lot is approximately 150 yards north of the United States/Mexico
26 International Boundary. Agent Pino also responded to the shoreline and assisted Agent Vito. The two
27 individuals claimed to be "Messing around with the Border Patrol" and did not mean any harm. Both
28

individuals stated that they were United States citizens born in San Diego, California and wanted to return to Mexico. Both individuals spoke fluently in the English language.

Both individuals were escorted to the Border Field State Park lower parking lot in order to perform record checks. The agents and both individuals were met at the lower parking lot by Agent Ramos. Agent Ramos began to interview one of the two individuals later identified as Cesar Fimbres. Agent Vito began to interview the other individual later identified as Miguel Fimbres. Due to the fact that Agent Pino had left his vehicle at Border Field State park near the United States/Mexico International boundary, there was a large crowd of people on the south side of the fence due to the rally, and the fact that Agent Vito's agency vehicle was disabled ten yards north of the United States/Mexico International boundary Agent Pino returned to his vehicle. Agent Pino secured his vehicle and kept watch over Agent Vito's disabled vehicle.

While being interview by Agent Ramos, Miguel Fimbres began to walk south towards Mexico. Agent Ramos ordered Miguel Fimbres to stop walking south and return to the park's lower parking lot. Miguel Fimbres refused to comply with Agent Ramos' order and stated that he was going to talk to his wife who was in Mexico. Agent Ramos then physically attempted to prevent Miguel Fimbres from returning to Mexico by wrestling Miguel Fimbres to the ground. Miguel Fimbres being a much bigger individual was able to escape Agent Ramos' grasp by getting to his feet, slipping out of his jacket, and running south towards Mexico. Agent Ramos relayed to Agent Pino information concerning the fleeing individual.

Park Ranger Jonathan Irwin of the State of California Department of Parks and Recreation was also present at the Border Field State Park and was observing the two Border Patrol Agents and the Fimbres brothers at the lower parking lot. Irwin was conducting his duties as a park ranger and was preparing to close the park to all civilian traffic. Ranger Irwin observed Agent Ramos' attempts to restrain Miguel Fimbres and observed Miguel Fimbres run southbound towards Mexico. Ranger Irwin pursued Miguel Fimbres in his department issued truck and managed to park in front of the fleeing Miguel Fimbres about twenty feet north of the United States/Mexico International boundary.

Agent Pino responded on foot to the radio transmission that Miguel Fimbres was fleeing the area. Agent Pino intercepted Miguel Fimbres as he ran around the back of Ranger Irwin's truck. As Miguel

Fimbres came around the back of the truck, he started to slip and placed his hand on the sand. Miguel Fimbres then assumed a fighting stance. As Agent Pino attempted to apprehend Miguel Fimbres, he head butted Agent Pino in the chest and started to drag Agent Pino towards the United States/Mexico International boundary. Ranger Irwin exited his truck and assisted Agent Pino. However, Miguel Fimbres continued to struggle and would not comply with commands to stop resisting. Miguel Fimbres continued to crawl and slowly inched his way closer to the United States/Mexico International boundary.

Agent Ramos arrived on foot to assist in the arrest of Miguel Fimbres. Miguel Fimbres continued to struggle with both agents and the park ranger. At this point a female, later identified as Olivia Fimbres, entered the United States without inspection by running across the United States/Mexico International boundary. Olivia Fimbres started to yell "Leave him alone. Let him go back to Mexico. He's my husband." Olivia Fimbres also started to pull both agents and the park ranger from Miguel Fimbres. Olivia Fimbres began to assist Miguel Fimbres in his struggle by pushing him south and interfering with the two agents and the park ranger. Agents Pino and Ramos both pulled Olivia Fimbres off of her husband numerous times and ordered her to stop interfering with federal agents while attempting to perform their official duties. Olivia Fimbres disobeyed the agents' commands to stay away from them and continued to pull them off of Miguel Fimbres. As the agents and the park ranger tried to pull Miguel Fimbres away from the fence, Olivia Fimbres grabbed Agent Pino's right arm numerous times. This cause Agent Pino to lose his grip on Miguel Fimbres. Olivia Fimbres also attempted to push Agent Pino and Agent Ramos away from Miguel Fimbres.

This made it impossible for the agents to pull Miguel Fimbres away from the fence. Because Miguel Fimbres continued to struggle and Olivia Fimbres was interfering with his arrest, Agent Pino deployed his agency issued oleoresin capsicum spray into the face of Miguel Fimbres. The oleoresin capsicum spray did not have any immediate effect on Miguel Fimbres and he continued to struggle south towards Mexico. Agent Pino also attempted to spray his oleoresin capsicum spray into the eyes of Olivia Fimbres, but the can was empty.

At the same time that Olivia Fimbres arrived at the scene, approximately a dozen other individuals from Mexico also arrived. The onlookers began to scream at the agents attempting to arrest

1  Miguel Fimbres. When Miguel Fimbres grabbed the metal pillars that are on the United States/Mexico
2  International boundary, the onlookers grabbed his arms and tried to pull him back into Mexico. A short
3  tug of war ensued between the two agents, park ranger and the onlookers before Miguel Fimbres was
4  pulled into Mexico.

5  Once Miguel Fimbres returned to Mexico, Agent Pino placed Olivia Fimbres into custody for
6  impeding federal agents attempting to arrest Miguel Fimbres.

7  Olivia Fimbres and Cesar Fimbres were transported to the Imperial Beach Border Patrol Station
8  for processing.

9  At the station, agents found through record checks that the individual who returned to Mexico
10 was Miguel Fimbres. Miguel Fimbres had given his name and date of birth to agents before running
11 back to Mexico. Miguel Fimbres has an extensive criminal record and immigration history.

12 Agents also located a California drivers license under the name Miguel Mauricio Fimbres. The
13 picture associated with CA A5512603 was positively identified by Agents Pino, Ramos, and Vito as the
14 individual that was observed entering into the United States illegally, spoke with agents, and ultimately
15 returned to Mexico after struggling with agents.

16     **B.**     **CESAR FIMBRES' STATEMENTS**

17 Field Operations Supervisor Brian Axthelm read Cesar Fimbres his <u>Miranda</u> rights at
18 approximately 11:00 p.m. as witnessed by Border Patrol Agent Joel Lara.

19     **C.**     **CESAR FIMBRES' CRIMINAL HISTORY**

20 Cesar Fimbres has two outstanding warrants from San Diego County. The warrants were for
21 possess of a controlled substance in violation of Health and Safety Code 11377(A) and possess control
22 substance paraphernalia in violation of Health and Safety Code 11364.

23     **D.**     **OLIVIA FIMBRES' STATEMENTS**

24 Field Operations Supervisor Brian Axthelm read Olivia Fimbres her <u>Miranda</u> rights at
25 approximately 11:47 p.m. as witnessed by Border Patrol Agent Joel Lara.

26     **E.**     **OLIVIA FIMBRES' CRIMINAL HISTORY**

27 Olivia Fimbres has no identifiable criminal history.

28

### F.    MIGUEL FIMBRES' CRIMINAL AND IMMIGRATION HISTORY

Miguel Fimbres' criminal history dates back almost 20 years. Without discussing every conviction, Defendant was convicted of importation of marijuana in violation of 21 U.S.C. §§ 952 and 960 in 1989. In 1992, he was convicted on voluntary manslaughter and child cruelty. He received a more than 11 years in prison for this conviction. Most recently, in 2001, Defendant was convicted of being a deported alien found in the United States in violation of 8 U.S.C. § 1326. He received 37 months in prison and three years supervised release.

Defendant was ordered deported on August 27, 1999.

## III

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

The United States has and will continue to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (19 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The United States has already delivered 87 pages of discovery to defense counsel including investigative reports and Defendant's statements. Nevertheless, each Defendant makes a series of discovery requests. The following is the United States' response to each Defendant's various discovery requests.

### 1.    Statements of Defendant

The United States has already produced reports disclosing the substance of Defendant's oral and written statements. The United States will continue to produce discovery related to Defendant's statements made in response to questions by agents. Relevant oral statements of Defendant are included in the reports already provided. Agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

A defendant is not entitled to rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992); United States v. Spencer, 618 F.2d 605 (9th Cir. 1980); see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Griffin, 659 F.2d 932 (9th Cir. 1981).

///

### 2. Arrest Reports and Notes

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendant's apprehension.

Defendant also requests TECS reports. The United States objects to this request. The United States does not intend to provide Defendant with TECS information unless the United States decides to introduce such evidence pursuant to Rule 404(b). See United States v. Vega, 188 F.3d 1150, 1153 (9th Cir. 1999). Otherwise, such evidence is only available to the defendant if it is "relevant to the development of a possible defense," United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990) (citations and quotations omitted), or it "enable[s] the accused to substantially alter the quantum of proof in his favor." United States v. Marshall, 532 F.2d 1279, 1285 (9th Cir. 1976). Defendant has shown neither.

### 3. Brady Material

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976) to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality. [Citation omitted.]

Id. at 774-775.

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-

chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

### 4. Sentencing Information

Defendant claims that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is premature.

### 5. Defendant's Prior Record

The United States has already provided each Defendant with a copy of his or her criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

### 6. Proposed 404(b) Evidence

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed. However, to avoid any arguments concerning lack of notice, the United States intends to introduce

Defendant Cesar Fimbres' prior immigration contacts and two outstanding warrants from San Diego County as evidence of intent to violate the immigration laws.

### 7. Evidence Seized

The United States has, and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 8. Preservation of Evidence

The United States will preserve all evidence to which Defendant is entitled to pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has, and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

### 9. Henthorn Material

The United States will review the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for Brady material. Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v. Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable to the defense that meets the appropriate standard of materiality . . ." United States v. Cadet, 727 F.2d at 1467, 1468. Further, if counsel for the United States is uncertain about the materiality of the information within its possession in such personnel files, the information will be submitted to the Court for in camera inspection and review.

**10.   Tangible Objects**

Again, the United States is well aware of and will fully perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all documents known or believed to exist, which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case.

The United States has, and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**11.   Expert Witnesses**

Defendant requests written reports and summaries of any expert testimony pursuant to Federal Rules of Criminal Procedure 16(a)(1)(E). The United States will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the United States intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705.

At trial, the United States will offer the testimony of a Fingerprint Expert to establish Defendant Miguel Fimbres' identity and prior history. The United States will provide a summary, and qualifications of the expert when they are available.

Although not expected to give expert opinions based upon specialized knowledge, the United States will also offer the testimony of a records custodian to introduce documents from Defendant's A-File. See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995) (in a drug case, the court found that "[t]hese observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (9th Cir. 1997) (agent "served as the conduit through which the

government introduced documents from INS' Alien Registry File".). This testimony will consist of explaining the purpose of the A-File, what documents are contained within the A-File, and the purpose of those documents.

### 12. **Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

### 13-14. **Impeachment and Evidence of Criminal Investigation**

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

### 15. **Evidence Affecting Perception**

The United States is unaware of any evidence indicating that a prospective witness has a perception, recollection, communication, or truth telling problem.

### 16-17. **Jencks Act Material and Giglio Information**

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

### 18. **Agreements Between the Government and Witnesses**

The United States is unaware of the existence of any agreements between the Government and witnesses in this case.

/ / /

/ / /

**19.     Informants and Cooperating Witnesses**

Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a per se rule that the United States must disclose the identity and location of confidential informants used in a case. Rather, the United States Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclosure, at this point in the case.

That being said, the United States is unaware of the existence of an informant in this case. However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible witnesses of the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977). The United States has already provided Defendant access to the names of potential witnesses in the investigative reports.

**20.     Bias By Informants or Cooperating Witnesses**

The United States is unaware of the existence of an informant in this case.

**21.     Reports of Scientific Tests or Examinations**

The United States will comply with its obligations pursuant to Rule 16. At trial, the United States intends to offer testimony of a fingerprint expert to identify Defendant as the person who was previously deported. The United States will provide the qualifications of the experts, if any. The United States will provide a summary of his report when it is available.

**22.    Residual Requests**

The United States objects to this request. The United States has and will continue to comply with its discovery obligations.

**IV**

**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO PRESENT EXCULPATORY EVIDENCE OF MIGUEL FIMBRES ESCAPE IS WITHOUT MERIT**

Defendant Cesar Fimbres moves to dismiss the indictment due to an alleged failure of the United States to notify the grand jury that Miguel Fimbres escaped. Assuming this is true, the Court should deny Defendant's motion for two reasons. First, the evidence is not exculpatory. The Agents positively identified Miguel Fimbres as the person Cesar Fimbres smuggled into the United States. There is no evidence to the contrary. That Miguel Fimbres escaped does nothing to show that Cesar Fimbres is innocent of the charge. Second, the United States has no duty to present evidence that cuts against the charge presented for indictment. See United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[1] (emphasis added)). See also, United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams) (emphasis added)).

---

[1] Note that in Williams the Court established:

> Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. See also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

In <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing <u>Williams</u> established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("<u>Williams</u> clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations.").

Defendant cites California Penal Code § 939.71(a). That the California Penal Code imposes a duty on State prosecutors to present "exculpatory" evidence to the grand jury is irrelevant since it does not apply to federal prosecutions. Finally, as noted previously, that Miguel Fimbres escaped is not exculpatory evidence. Thus, Defendant's motion should be denied.

**V**

**DEFENDANT'S MOTION TO DISMISS COUNT ONE IS WITHOUT MERIT**

Defendant Cesar Fimbres challenges Count One on the following grounds: (1) it is unconstitutionally vague regarding the terms inadmissible and aggravated felony; (2) it fails to allege Miguel Fimbres' ground for inadmissibility; (3) the United States has not proven that Miguel Fimbres was inadmissible as a matter of law; and (4) the decision in <u>United States v. Flores-Garcia</u>, 198 F.3d 1119, 1121 (9th Cir. 2000) was wrong and the Court should require the United States to prove that Cesar Fimbres knew why Miguel Fimbres was inadmissible.

**A.    The Count Is Not Vague**

A statute is not vague if "reasonable person[s] of ordinary intelligence would understand that [their] conduct is prohibited." <u>United States v. Elias</u>, 269 F.3d 1003, 1014 (9th Cir. 2001). A vagueness challenge, outside the limited context of the First Amendment, will turn on the specific facts at issue in the case, and will be examined only as applied to the defendant. <u>United States v. Mazurie</u>, 419 U.S. 544, 550 (1975). "A party challenging the facial validity of a regulation on vagueness grounds outside the domain of the First Amendment must demonstrate that the enactment is impermissibly vague in all of its applications." <u>United States v. Dang</u>, 488 F.3d 1135, 1141 (9th Cir. 2007). Defendant attempts to meet this standard by arguing that § 1182 (and thereby § 1327) contains shifting legal terms of art.

Constitutional vagueness requirements apply only to "vague statutory language" or to "unforeseeable and retroactive judicial expansion of statutory language that appears narrow and precise on its face." Rogers v. Tennessee, 532 U.S. 451, 457 (2001). Neither is present here. Rather than expand the statutory language, decisions interpreting immigration law explain it. These decisions often reduce the number of offenses that may be considered aggravated felonies. Nevertheless, the crime of voluntary manslaughter has never been anything other than an aggravated felony. See Vargas-Hernandez v. Gonzales, 497 F.3d 919, 923 (9th Cir. 2007) (holding that "the voluntary manslaughter conviction [Cal. Penal Code 192] was properly used to find Vargas removable under INA § 237(a)(2)(A)(iii) for having been convicted of an aggravated felony." Thus, Defendant's vagueness challenge fails.

### B.   The Count Does Allege Miguel Fimbres' Aggravated Felony

Defendant argues that Count One must be dismissed because it fails to allege the ground under which Miguel Fimbres is inadmissible. However, Count One alleges "said alien being excludable under Title 8, United States Code, Section 1182(a)(2), **as an alien who has been convicted of an aggravated felony, to wit: voluntary manslaughter, in violation of California Penal Code 192(A)**."

### C.   Miguel Fimbres' Voluntary Manslaughter Conviction Makes Him Inadmissible

Defendant argues that the United States is required to prove that Miguel Fimbres was convicted of an aggravated felony. As cited previously, Miguel Fimbres' voluntary manslaughter conviction is an aggravated felony as a matter of law.

Section 1182(a)(2)(A)(i)(I) makes inadmissible "any alien convicted of, or who admits having committed or who admits committing acts which constitute the essential elements of– (I) a crime involving moral turpitude. . . ." Whether a statute defines a crime involving moral turpitude is a question of law. United States v. Chu Kong Yin, 935 F.2d 990, 1003 (9th Cir. 1991). To determine this, courts are to consider "the elements or nature of a crime as defined by the relevant statute, not the actual conduct that led to the conviction." Gonzalez-Alvarado v. INS, 39 F.3d 245, 246 (9th Cir. 1994).

Typically, crimes of moral turpitude involve fraud. See Grageda v. INS, 12 F.3d 919, 921 (9th Cir. 1993). However, the Ninth Circuit has included in this category acts "of baseness or depravity contrary to accepted moral standards," Grageda, 12 F.3d at 921 (quotation omitted), such crimes involve

moral turpitude "by their very nature." See id. at 922. "A crime involving the willful commission of a base or depraved act is a crime involving moral turpitude, whether or not the statute requires proof of evil intent." Gonzalez-Alvarado, 39 F.3d at 246. The Ninth Circuit has acknowledged several crimes involving acts of baseness or depravity -- such as "murder, rape, robbery, kidnaping, **voluntary manslaughter**, some involuntary manslaughter offenses, aggravated assaults, mayhem, theft offenses, spousal abuse, child abuse, and incest" -- have been found to be turpitudinous even absent the element of fraud. Matter of Lopez-Meza, 22 I. & N. Dec. 1188, 1193 (BIA 1999) (emphasis added); see also Grageda, 12 F.3d at 922 (spousal abuse); Guerrero de Nodahl v. INS, 407 F.2d 1405, 1406-07 (9th Cir. 1969) (child abuse). With his voluntary manslaughter conviction, Miguel Fimbres is inadmissible for being convicted of a crime of moral turpitude.

Next, in Vargas-Hernandez v. Gonzales, 497 F.3d 919, 923 (9th Cir. 2007), the Ninth Circuit held that "the voluntary manslaughter conviction [Cal. Penal Code 192] was properly used to find Vargas removable under INA § 237(a)(2)(A)(iii) for having been convicted of an aggravated felony."

As previously found by Judge Miller and affirmed on appeal, Miguel Fimbres is an aggravated felon due to his conviction for voluntary manslaughter in violation of Penal Code 192(a) (not to mention his conviction for willful cruelty to a child in violation of Penal Code 273a(1)).

### D. The United States Is Not Required to Prove Cesar Fimbres Knew Miguel Fimbres was an Aggravated Felon and Inadmissible

Defendant argues that the Court should ignore binding precedent and require the United States prove that Cesar Fimbres knew that Miguel Fimbres was both an aggravated felon and inadmissible. As acknowledged by Cesar Fimbres, the United States is only required to show that the defendant knew the alien was inadmissible under § 1182 for any reason. See United States v. Flores-Garcia, 198 F.3d 1119, 1121 (9th Cir. 2000). For example, in Flores-Garcia, 198 F.3d at 1121, the defendant admitted that he knew that the alien was without documents to enter the United States. The Ninth Circuit held that the defendant's admission was sufficient knowledge that the alien was "inadmissible" under § 1182(a)(7) and affirmed the defendant's § 1327 conviction. Not only is an alien without documents to enter the United States inadmissible, a deported alien is also inadmissible. See 8 U.S.C. § 1182(a)(9)(A)(i). Thus, as held by the Ninth Circuit, Defendant's argument fails.

# VI

# **DEFENDANT'S MOTION TO PRODUCE GRAND JURY TRANSCRIPTS SHOULD BE DENIED**

The Court previously denied this motion.

# VII

# **A BILL OF PARTICULAR IS UNNECESSARY**

Cesar Fimbres requests that the Court direct the United States to file a bill of particulars. Cesar Fimbres argues that he is unaware of the United States' allegations.

While a district court has discretion to require a bill of particulars, this discretion should only be exercised to protect a defendant against double jeopardy, and to enable him to adequately prepare his defense and avoid surprise at trial. See United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983); United States v. Giese, 597 F.2d 1170, 1180 (9th Cir. 1979). Defendant has provided no authority that adds to this list of limited bases for a bill of particulars. Moreover, full discovery "obviates the need for a bill of particulars." Giese, 597 F.2d at 1180; see also United States v. Mitchell, 744 F.2d 701, 705 (9th Cir. 1984) (stating that the purposes of a bill of particulars "are served if the indictment itself provides sufficient details of the charges and if the Government provides full discovery to the defense"); Long, 706 F.2d at 1054 (same).

It has been long established that bills of particulars in criminal cases are not to be used to require the United States to disclose all of its evidence. Cook v. United States, 354 F.2d 529, 531 (9th Cir. 1965); United States v. Ryland, 806 F.2d 941, 942 (9th Cir. 1986). Likewise, courts have long held that it is improper to use a bill of particulars to force the United States to disclose all of its legal theories. See Rose v. United States, 149 F.2d 755, 758 (9th Cir. 1945) ("The purpose of a bill of particulars is to secure facts, not legal theories."). The limits of discovery allowable in a federal criminal case are set forth in Federal Rule of Criminal Procedure Rule 16; and Rule 7(f) "should not be invoked to bring about a result prohibited in effect by Rule 16." Cooper v. United States, 282 F.2d 527, 532 (9th Cir. 1960); see also United States v. Hunter, 13 F. Supp. 2d 586, 590 (D. Vt. 1998) ("To require the government to disclose information beyond the scope of Rule 16(a) would violate the purpose of the discovery rules and the purpose of a bill of particulars.").

Cesar Fimbres is charged in Count One of the Indictment with aiding certain aliens to enter the United States. Cesar Fimbres contends that the Indictment does not allege the grounds of Miguel Fimbres' inadmissibility. This is obviously not true. Then, in the very next sentence, he contends that the Indictment fails to allege how the voluntary manslaughter conviction is an aggravated felony making Miguel Fimbres inadmissible. The Indictment need not allege why voluntary manslaughter is an aggravated felony. It simply is as a matter of law. Thus, there is no need to order a bill of particulars.

## VIII

## DEFENDANT'S MOTION FOR LEAVE TO FILE FURTHER MOTIONS

Defendant's motion for leave to file further motions should be denied except to the extent that such motions are based on new discovery.

## IX

## THE UNITED STATES MOTION FOR RECIPROCAL DISCOVERY

The United States requests reciprocal discovery. As of the date of the preparation of these motions, each Defendant has produced no reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of any Defendant. Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

## X

## CONCLUSION

For the foregoing reasons, the United States asks that the Court deny Defendant's motions, except where unopposed, limit further motions to those based on new law or facts.

DATED: April 24, 2008                           Respectfully submitted,

                                                KAREN P. HEWITT
                                                United States Attorney

                                                *s/Christopher M. Alexander*
                                                CHRISTOPHER M. ALEXANADER
                                                Assistant United States Attorney
                                                Attorneys for Plaintiff
                                                United States of America
                                                Email: Christopher.M.Alexander@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br>   v.<br><br>CESAR RICARDO FIMBRES-PEREZ (1),<br>OLIVIA FIMBRES-PEREZ (2),<br>MIGUEL FIMBRES-PEREZ (3),<br><br>         Defendants. | Criminal Case No.   08CR0021-DMS<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response to Defendant's Motions to (1) compel discovery/preserve evidence and (2) various grounds to dismiss the Indictment or certain counts, together with statement of facts, memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1.    Michelle Betancourt, Esq.
           Atty for Defendant Cesar Fimbres

    2.    Ezekiel Cortez, Esq.
           Atty for Defendant Olivia Fimbres

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 24, 2008.

                             *s/Christopher M. Alexander*
                             CHRISTOPHER M. ALEXANDER