1 KAREN P. HEWITT
United States Attorney
2 CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney
3 California State Bar No. 201352
Federal Office Building
4 880 Front Street, Room 6293
San Diego, California 92101-8893
5 Telephone: (619) 557-7425

6 Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>  Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>CESAR RICARDO FIMBRES-PEREZ (1),  )<br>  )<br>  )<br>  Defendant.  )<br>_____  ) | Criminal Case No. 08CR0021-DMS<br><br>DATE:  May 5, 2008<br>TIME:  9:00 a.m.<br><br>THE UNITED STATES' TRIAL MEMORANDUM |

The UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Christopher M. Alexander, Assistant U.S. Attorney, files its trial memorandum.

///
///
///
///
///
///
///
///

**I**

**STATEMENT OF CASE**

### A. INDICTMENT

On January 2, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Defendant Cesar Ricardo Fimbres-Perez ("Cesar Fimbres") in Count One with aiding the entry of an alien with a prior aggravated felony conviction into the United States in violation of 8 U.S.C. § 1327; Defendant Olivia Fimbres ("Olivia Fimbres") was charged in Counts Two and Three with assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1) and charged in Count Six with aiding the escape of Miguel Fimbres-Perez in violation of 18 U.S.C. § 751(a); and Defendant Miguel Fimbres-Perez ("Miguel Fimbres") was charged in Count Four with assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1) and charged in Count Five with being a deported alien attempting to enter the United States after deportation in violation of 8 U.S.C. § 1326 (collectively, "Defendants"). On January 3, 2008, Defendants Cesar Fimbres and Olivia Fimbres were arraigned on the Indictment and entered not guilty pleas. Defendant Miguel Fimbres is a fugitive. The Court set a motion hearing date for February 1, 2008. On April 29, 2008, Defendant Olivia Fimbres entered a guilty plea to a Superseding Information.

### B. TRIAL STATUS

Trial is scheduled for Tuesday, May 6, 2008 at 9:00 a.m., before the Honorable Dana M. Sabraw. The United States anticipates that its case-in-chief will last one day.

### C. STATUS OF COUNSEL

Defendant is represented by appointed counsel, Michelle Betancourt and Shaffy Moeel.

### D. CUSTODY STATUS

Defendant is in custody.

### E. INTERPRETER

The United States does not need an interpreter for its witnesses. However, Defendant may request a Spanish language interpreter.

### F. JURY WAIVER

Defendant has not waived trial by jury.

### G.     **PRETRIAL MOTIONS**

On January 17, 2008, Defendant Olivia Fimbres filed a motion to compel discovery. On January 18, 2008, Defendant Cesar Fimbres filed motions to compel discovery, dismiss, and produce transcripts.

On February 1, 2008, the Court continued the matter to February 15, 2008 so that the Parties could address discovery issues. On February 15, 2008, the United States raised the issue of a conflict of interest. The Court requested briefing. On March 4, 2008, the United States filed a motion to disqualify counsel and a response to Defendant Cesar Fimbres' request to produce transcripts.

On March 14, 2008, the Court declined to relieve Federal Defenders. The Court also denied Defendant Cesar Fimbres' request to produce grand jury transcripts.

On April 11, 2008, Defendant Cesar Fimbres filed a motion to sever. The United States did not oppose this request. The Court granted severance on April 18, 2008. The Court eventually set a motion hearing date for April 30, 2008 and a trial date of May 5, 2008.

On April 24, 2008, the United States responded to Defendant Cesar Fimbres' remaining motions. On April 30, 2008, the Court held a motion hearing. The Court denied Defendant's motions to dismiss and for a bill of particulars.

### H.     **MOTIONS IN LIMINE**

On April 24, 2008, the United States filed motions in limine. Defendant did not file any motions in limine. On April 28, 2008, Defendant filed an Opposition to the United States' motions in limine.

On April 30, 2008, the Court made the following rulings: (a) granted preclusion of expert testimony by defense; (b) denied 404(b)/609 evidence without prejudice; (c) granted preclusion of all witnesses except case agent and defense investigator; (d) granted prohibition of reference to punishment; (e) granted preclusion of self-serving hearsay; (f) granted limitation of character evidence; (g) granted admission of evidence of entry and flight; (h) granted preclusion of evidence of duress and necessity; (i) granted admission of demeanor evidence; (j) granted admission of co-conspirator statements; (k) granted admission of A-File documents; (l) granted admission of

testimony by A-File custodian; and (m) granted reciprocal discovery. On May 4, 2008, Defendant filed supplemental briefing on its motions to dismiss the Indictment and in opposition to admitting co-conspirator statements.

### I.   STIPULATIONS

The parties have not entered into any stipulations.

### J.   DISCOVERY

The United States has complied with all of its discovery obligations. Defendant has provided no reciprocal discovery.

## II

## STATEMENT OF FACTS

### A.   THE APPREHENSION

On December 15, 2007, Border Patrol Agents Luis Ramos and Eric Vito were assigned to an area known as Whiskey 15 position at the Imperial Beach area of operations. Border Patrol Agent Leslie H. Pino was assigned to the plainclothes Rapid Engagement Support Enforcement Team ("RESET") and was also working in the Whiskey 15 area. All three agents were at Border Field State Park observing a Border Angels rally.

The Whiskey 15 area and Border Field State Park are approximately five miles west of the San Ysidro Port of Entry and adjacent to the United States/Mexico International border. The western border of the Whiskey 15 area and Border Field State park is the Pacific Ocean.

At approximately 5:30 p.m., Agent Ramos observed two individuals enter into the United States without inspection. The two individuals walked a few yards into the United States and then returned to Mexico. The two individuals repeated their actions twice before illegally entering a third time and continuing northbound along the shoreline. Agent Ramos observed that one of the individuals was wearing a yellow striped jacket. Agent Ramos relayed this information via agency radio to Agent Vito and continued to observe the two individuals walking up the beach.

Agent Vito responded to the shoreline to intercept the two individuals but his vehicle became disabled about ten yards north of the United States/Mexico International Boundary. Agent Vito then responded to the two individuals on foot and encountered them directly west of the Border Field

State park lower parking lot. The parking lot is approximately 150 yards north of the United States/Mexico International Boundary. Agent Pino also responded to the shoreline and assisted Agent Vito. The two individuals claimed to be "Messing around with the Border Patrol" and did not mean any harm. Both individuals stated that they were United States citizens born in San Diego, California and wanted to return to Mexico. Both individuals spoke fluently in the English language.

Both individuals were escorted to the Border Field State Park lower parking lot in order to perform record checks. The agents and both individuals were met at the lower parking lot by Agent Ramos. Agent Ramos began to interview one of the two individuals later identified as Cesar Fimbres. Agent Vito began to interview the other individual later identified as Miguel Fimbres. Due to the fact that Agent Pino had left his vehicle at Border Field State park near the United States/Mexico International boundary, there was a large crowd of people on the south side of the fence due to the rally, and the fact that Agent Vito's agency vehicle was disabled ten yards north of the United States/Mexico International boundary Agent Pino returned to his vehicle. Agent Pino secured his vehicle and kept watch over Agent Vito's disabled vehicle.

While being interview by Agent Ramos, Miguel Fimbres began to walk south towards Mexico. Agent Ramos ordered Miguel Fimbres to stop walking south and return to the park's lower parking lot. Miguel Fimbres refused to comply with Agent Ramos' order and stated that he was going to talk to his wife who was in Mexico. Agent Ramos then physically attempted to prevent Miguel Fimbres from returning to Mexico by wrestling Miguel Fimbres to the ground. Miguel Fimbres being a much bigger individual was able to escape Agent Ramos' grasp by getting to his feet, slipping out of his jacket, and running south towards Mexico. Agent Ramos relayed to Agent Pino information concerning the fleeing individual.

Park Ranger Jonathan Irwin of the State of California Department of Parks and Recreation was also present at the Border Field State Park and was observing the two Border Patrol Agents and the Fimbres brothers at the lower parking lot. Irwin was conducting his duties as a park ranger and was preparing to close the park to all civilian traffic. Ranger Irwin observed Agent Ramos' attempts to restrain Miguel Fimbres and observed Miguel Fimbres run southbound towards Mexico. Ranger Irwin pursued Miguel Fimbres in his department issued truck and managed to park in front of the

fleeing Miguel Fimbres about twenty feet north of the United States/Mexico International boundary.

Agent Pino responded on foot to the radio transmission that Miguel Fimbres was fleeing the area. Agent Pino intercepted Miguel Fimbres as he ran around the back of Ranger Irwin's truck. As Miguel Fimbres came around the back of the truck, he started to slip and placed his hand on the sand. Miguel Fimbres then assumed a fighting stance. As Agent Pino attempted to apprehend Miguel Fimbres, he head butted Agent Pino in the chest and started to drag Agent Pino towards the United States/Mexico International boundary. Ranger Irwin exited his truck and assisted Agent Pino. However, Miguel Fimbres continued to struggle and would not comply with commands to stop resisting. Miguel Fimbres continued to crawl and slowly inched his way closer to the United States/Mexico International boundary.

Agent Ramos arrived on foot to assist in the arrest of Miguel Fimbres. Miguel Fimbres continued to struggle with both agents and the park ranger. At this point a female, later identified as Olivia Fimbres, entered the United States without inspection by running across the United States/Mexico International boundary. Olivia Fimbres started to yell "Leave him alone. Let him go back to Mexico. He's my husband." Olivia Fimbres also started to pull both agents and the park ranger from Miguel Fimbres. Olivia Fimbres began to assist Miguel Fimbres in his struggle by pushing him south and interfering with the two agents and the park ranger. Agents Pino and Ramos both pulled Olivia Fimbres off of her husband numerous times and ordered her to stop interfering with federal agents while attempting to perform their official duties. Olivia Fimbres disobeyed the agents' commands to stay away from them and continued to pull them off of Miguel Fimbres. As the agents and the park ranger tried to pull Miguel Fimbres away from the fence, Olivia Fimbres grabbed Agent Pino's right arm numerous times. This cause Agent Pino to lose his grip on Miguel Fimbres. Olivia Fimbres also attempted to push Agent Pino and Agent Ramos away from Miguel Fimbres.

This made it impossible for the agents to pull Miguel Fimbres away from the fence. Because Miguel Fimbres continued to struggle and Olivia Fimbres was interfering with his arrest, Agent Pino deployed his agency issued oleoresin capsicum spray into the face of Miguel Fimbres. The oleoresin capsicum spray did not have any immediate effect on Miguel Fimbres and he continued to struggle

south towards Mexico. Agent Pino also attempted to spray his oleoresin capsicum spray into the eyes of Olivia Fimbres, but the can was empty.

At the same time that Olivia Fimbres arrived at the scene, approximately a dozen other individuals from Mexico also arrived. The onlookers began to scream at the agents attempting to arrest Miguel Fimbres. When Miguel Fimbres grabbed the metal pillars that are on the United States/Mexico International boundary, the onlookers grabbed his arms and tried to pull him back into Mexico. A short tug of war ensued between the two agents, park ranger and the onlookers before Miguel Fimbres was pulled into Mexico.

Once Miguel Fimbres returned to Mexico, Agent Pino placed Olivia Fimbres into custody for impeding federal agents attempting to arrest Miguel Fimbres.

Olivia Fimbres and Cesar Fimbres were transported to the Imperial Beach Border Patrol Station for processing.

At the station, agents found through record checks that the individual who returned to Mexico was Miguel Fimbres. Miguel Fimbres had given his name and date of birth to agents before running back to Mexico. Miguel Fimbres has an extensive criminal record and immigration history.

Agents also located a California drivers license under the name Miguel Mauricio Fimbres. The picture associated with CA A5512603 was positively identified by Agents Pino, Ramos, and Vito as the individual that was observed entering into the United States illegally, spoke with agents, and ultimately returned to Mexico after struggling with agents.

**B.     CESAR FIMBRES' STATEMENTS**

Field Operations Supervisor Brian Axthelm read Cesar Fimbres his Miranda rights at approximately 11:00 p.m. as witnessed by Border Patrol Agent Joel Lara.

**C.     CESAR FIMBRES' CRIMINAL HISTORY**

Cesar Fimbres has two outstanding warrants from San Diego County. The warrants were for possess of a controlled substance in violation of Health and Safety Code 11377(A) and possess control substance paraphernalia in violation of Health and Safety Code 11364.

### D. OLIVIA FIMBRES' STATEMENTS

Field Operations Supervisor Brian Axthelm read Olivia Fimbres her Miranda rights at approximately 11:47 p.m. as witnessed by Border Patrol Agent Joel Lara.

### E. OLIVIA FIMBRES' CRIMINAL HISTORY

Olivia Fimbres has no identifiable criminal history.

### F. MIGUEL FIMBRES' CRIMINAL AND IMMIGRATION HISTORY

Miguel Fimbres' criminal history dates back almost 20 years. Without discussing every conviction, Defendant was convicted of importation of marijuana in violation of 21 U.S.C. §§ 952 and 960 in 1989. In 1992, he was convicted of murder and child cruelty. This conviction was later reduced 1996 to voluntary manslaughter. He received a more than 11 years in prison for this conviction. Most recently, in 2001, Defendant was convicted of being a deported alien found in the United States in violation of 8 U.S.C. § 1326. He received 37 months in prison and three years supervised release.

Defendant was ordered deported on August 27, 1999.

## III

## PERTINENT LAW

### A. 8 U.S.C. § 1327, AIDING OR ASSISTING CERTAIN ALIENS

The essential elements of a violation of 8 U.S.C. Section 1327 are:

1. Defendant knowingly aided or assisted the alien to enter the United States;

2. Defendant knew that the alien was inadmissible; and

3. The alien was inadmissible under Title 8, United States Code, section 1182(a)(2) or (3).

See United States v. Flores-Garcia, 198 F.3d 1119, 1121 (9th Cir. 2000); see also United States v. Figueroa, 165 F.3d 111, 113 (2d Cir. 1998).

### B. ALIENAGE

The Ninth Circuit could not be more clear when it held that "deportation documents are admissible to prove alienage under the public records exception to the hearsay rule." See United States v. Hernandez-Herrera, 273 F.3d 1213, 1218 (9th Cir. 2001) (affirming the admission of

deportation documents to prove alienage). The Ninth Circuit has also made clear the type of deportation documents that may be used as evidence of alienage:

> Although neither a deportation order, see United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (citing United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir. 1994)), nor the defendant's own admissions, see United States v. Hernandez, 105 F.3d 1330, 1332 (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez-Cortez's prior **deportation order**, **admissions Ramirez-Cortez made in his underlying deportation proceeding**, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien. Cf. United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (finding sufficient evidence of alienage where the government's evidence consisted of a prior **deportation order**, the defendant's admissions to an INS agent that he was a Mexican citizen, and his **admissions during the deportation hearing** that he was not a United States citizen); United States v. Contreras, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction when the government introduced a prior **deportation order**, the **deportation hearing transcript**, which indicated that the defendant admitted his Mexican citizenship under oath, and testimony of an INS agent that the defendant was a Mexican citizen).

United States v. Ramirez-Cortez, 213 F.3d 1149, 1158 (9th Cir. 2000) (emphasis added).

The Ninth Circuit has affirmed the admission of orders to show cause, see Sotelo, 109 F.3d at 1449, admissions made during deportation hearings, see id., and transcripts, see Contreras, 63 F.3d at 858. In Sotelo, the Ninth Circuit described a list of evidence that was admitted at trial which supported a defendant's § 1326 conviction:

> The prosecution also presented several documents from the prior deportation proceeding. During the **deportation hearing**, Sotelo admitted, through his lawyer, allegations in the order to show cause that he is not a citizen or national of the United States and he is a native and citizen of Mexico. The prosecution presented the **order to show cause** and an **advisement of rights form**, which Sotelo signed. The advisement of rights form stated that Sotelo admitted he was in the United States illegally. Finally, the prosecution presented the order of deportation and the warrant of deportation, evidencing Sotelo's actual deportation.

109 F.3d at 1449 (emphasis added).

### C. The Law Regarding Knowledge of Inadmissibility

To proved the element that a defendant knew that the alien was inadmissible, the United States is only required to show that the defendant knew the alien was inadmissible under § 1182 for any reason. See Flores-Garcia, 198 F.3d at 1121. For example, in Flores-Garcia, 198 F.3d at 1121,

1  the defendant admitted that he knew that the alien was without documents to enter the United States.
2  The Ninth Circuit held that the defendant's admission was sufficient knowledge that the alien was
3  "inadmissible" under § 1182(a)(7) and affirmed the defendant's § 1327 conviction.  Not only is an
4  alien without documents to enter the United States inadmissible, a deported alien is also
5  inadmissible.  See 8 U.S.C. § 1182(a)(9)(A)(i).

### D. The Law Regarding Inadmissibility

Section 1182(a)(2)(A)(i) makes inadmissible "any alien convicted of, or who admits having committed or who admits committing acts which constitute the essential elements of– (I) a crime involving moral turpitude. . . ."  Whether a statute defines a crime involving moral turpitude is a question of law.  United States v. Chu Kong Yin, 935 F.2d 990, 1003 (9th Cir. 1991).  In making this determination, courts are to consider "the elements or nature of a crime as defined by the relevant statute, not the actual conduct that led to the conviction."  Gonzalez-Alvarado v. INS, 39 F.3d 245, 246 (9th Cir. 1994).

Typically, crimes of moral turpitude involve fraud.  See Grageda v. INS, 12 F.3d 919, 921 (9th Cir. 1993).  However, the Ninth Circuit has included in this category acts "of baseness or depravity contrary to accepted moral standards," Grageda, 12 F.3d at 921 (quotation omitted), such crimes involve moral turpitude "by their very nature."  See id. at 922.  "A crime involving the willful commission of a base or depraved act is a crime involving moral turpitude, whether or not the statute requires proof of evil intent."  Gonzalez-Alvarado, 39 F.3d at 246.  The Ninth Circuit has acknowledged several crimes involving acts of baseness or depravity -- such as "murder, rape, robbery, kidnaping, **voluntary manslaughter**, some involuntary manslaughter offenses, aggravated assaults, mayhem, theft offenses, spousal abuse, child abuse, and incest" -- have been found to be turpitudinous even absent the element of fraud.  Matter of Lopez-Meza, 22 I. & N. Dec. 1188, 1193 (BIA 1999) (emphasis added); see also Grageda, 12 F.3d at 922 (spousal abuse); Guerrero de Nodahl v. INS, 407 F.2d 1405, 1406-07 (9th Cir. 1969) (child abuse).  With his voluntary manslaughter conviction, Miguel Fimbres is inadmissible for being convicted of a crime of moral turpitude.

Next, in Vargas-Hernandez v. Gonzales, 497 F.3d 919, 923 (9th Cir. 2007), the Ninth Circuit held that "the voluntary manslaughter conviction [Cal. Penal Code 192] was properly used to find

1  Vargas removable under INA § 237(a)(2)(A)(iii) for having been convicted of an aggravated
2  felony."

3  As previously found by Judge Miller and affirmed on appeal, Miguel Fimbres is an
4  aggravated felon due to his conviction for voluntary manslaughter in violation of Penal Code 192(a)
5  (not to mention his conviction for willful cruelty to a child in violation of Penal Code 273a(1)). He
6  received an 11 year sentence. As a matter of law, Miguel Fimbres' convictions are crimes of moral
7  turpitude.

8  Defendant argues that voluntary manslaughter is comparable to drunk driving as in <u>Leocal</u>
9  <u>v. Ashcroft</u>, 543 U.S. 1 (2004) or a reckless assault, as in <u>Fernandez-Ruiz v. Gonzalez</u>, 466 F.3d
10 1121 (9th Cir. 2006). None of these cases directly address voluntary manslaughter in violation of
11 Cal. Penal Code § 192(a). Defendant does not even attempt to distinguish <u>Vargas-Hernandez</u>, a case
12 decided after <u>Local</u> and <u>Fernandez-Ruiz</u>. This Court is bound by the decisions cited above that
13 directly address Cal. Penal Code § 192(a). Therefore, the Court should instruct the jury that if it
14 finds that Miguel Fimbres is an alien that was convicted of voluntary manslaughter and child cruelty,
15 then he was inadmissible under Title 8 United States Code Section 1182(a)(2) or (3).

16 **E.     COURT RECORDS**

17 The United States will ask the Court to take judicial notice of the following: (1) Transcript
18 of Removal Proceedings and Conviction Record dated November 9, 2000 filed by Federal Defenders
19 of San Diego on behalf of Defendant Miguel Fimbres in admitted under oath that he was an alien
20 among other things; (2) the Order Denying Motion to Dismiss Indictment relating to Defendant
21 Miguel Fimbres dated December 14, 2000 by Judge Miller; (3) Defendant Miguel Fimbres' Plea
22 Colloquy dated December 19, 2000; (4) Defendant Miguel Fimbres' Sentencing Memorandum dated
23 March 1, 2000 as filed by Federal Defenders; (5) Defendant Miguel Fimbres' Presentence Report;
24 and (6) the Memorandum Decision dated December 20, 2001. The copies are official court
25 documents and are presumed to accurately reflect the proceedings. <u>See</u> 28 U.S.C. § 753(b); Fed. R.
26 Evid. 803(8)(B), 902(4); <u>United States v. Lumumba</u>, 794 F.2d 806 (2nd Cir. 1986) (court permitted
27 trial transcript as a certified public document under FRE 902(4)); <u>Abatino v. United States</u>, 750 F.2d
28 1442, 1445 (9th Cir. 1984); <u>United States v. Hoffman</u>, 607 F.2d 280, 286 (9th Cir. 1979); <u>Warth v.</u>

Department of Justice, et al., 595 F.2d 521, 523 (9th Cir. 1979). This evidence is directly relevant to prove all three elements of the offense. See Fed. R. Evid. 402 (stating in part, "All relevant evidence is admissible"). Defendant Miguel Fimbres' statements are admissible as non-hearsay under Rule 803(8), (19), and (22).

### F. PLEA AGREEMENT AND ADDENDUM

Federal courts have held that the government may offer evidence in its case-in-chief in anticipation of an expected aspect of the defense. See United States v. Curtin, 489 F.3d 935, 940-41 (9th Cir. 2007) (en banc) (citing United States v. Veltre, 591 F.2d 347 (5th Cir. 1979) which affirmed the introduction of a plea of guilty to the crime for which Veltre was on trial during direct examination of a cooperating codefendant.). In the Ninth Circuit, the rule permitting anticipatory impeachment on direct is the same. Curtin, 489 F.3d at 940-41 (citing United States v. Halbert, 640 F.2d 1000, 1005 (9th Cir. 1981) (per curiam) which held "The prosecutor may also wish to place the plea [of a cooperating codefendant] before the jury [in its case-in-chief] so as to blunt defense efforts at impeachment and dispel the suggestion that the government or its witness had something to hide."); see also United States v. Necoechea, 986 F.2d 1273, 1280 n.4 (9th Cir. 1993); United States v. Henderson, 717 F.2d 135, 138 (4th Cir. 1983) (holding that "the district court did not abuse its discretion in permitting the government to introduce the terms of Pegeus's plea bargain during the government's case in chief."). The United States should be permitted to question the cooperating witness in its case-in-chief about her prior history, guilty plea, and cooperation agreement.

### G. 404(b) and 609 EVIDENCE

The Court has already ruled on the United States' 404(b) request regarding the outstanding warrant. As impeachment, the United States will introduce Defendant's April 24, 2007 felony conviction for possession of a controlled substance in violation of Health and Safety Code § 11377(a), the conviction for which he had the outstanding warrant. The United States will request the conviction be redacted prior to introduction.

Federal Rule of Evidence 609(a) provides in pertinent part:

> For purposes of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by

> death or imprisonment in excess of one year under the law under which the witness was convicted, <u>and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused</u>; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Fed. R. Evid. 609(a) (emphasis added).

The Ninth Circuit has listed five factors that the district court should balance in making the determination required by Rule 609. <u>United States v. Browne</u>, 829 F.2d 760 (9th Cir. 1987). Specifically, the court must consider: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility. <u>Id.</u> at 762-763. The Ninth Circuit applied these factors in <u>United States v. Martinez</u>, 369 F.3d 1076, 1088 (9th Cir. 2004), and affirmed the defendant's impeachment with a sanitized drug conviction in a § 1326 prosecution.

In this case, it is anticipated that Defendant will dispute at least one of the elements. Thus, as in <u>Martinez</u>, his credibility is squarely at issue in this § 1327 prosecution. If Defendant chooses to testify at trial, the United States should not be prevented from demonstrating Defendant's lack of trustworthiness by utilizing his prior conviction for impeachment purposes.

### H.   DUPLICATES

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under circumstances, it would be unfair to admit the duplicate instead of the original. <u>See</u> Fed. R. Evid. 1003.

## IV

## WITNESSES

The United States reserves the right to add, omit, substitute or change the order of witnesses. Presently, the United States intends to call the following witnesses during its case-in-chief:

1. Border Patrol Agent Luis Ramos
2. Border Patrol Agent Eric Vito

3. Border Patrol Agent Leslie H. Pino

4. Park Ranger Jonathan Irwin

5. Senior Patrol Agent Jorge Salazar

6. Fingerprint Expert David Beers

7. Olivia Fimbres

8. U.S. Probation Officer Kelvin Bradley

9. U.S. Probation Officer Frank Pucharski

## V

## **EXHIBIT LIST**

A final exhibit list will be provided at trial. The United States anticipates offering the following exhibits at trial, all of which have been produced to counsel. The United States reserves the right to add, delete or amend its exhibit list.

1. Map
2. Photographs of Border Field State Park Area
3. DMV Photograph of Miguel Fimbres
4. Notice to Appear dated August 21, 1999
5. Immigration Judge Order dated August 27, 1999
6. Warrant of Deportation dated July 21, 2000
7. May 2008 Certificate of Non-existence of Record
8. Transcript of Removal Proceedings dated November 9, 2000 filed by Federal Defenders of San Diego on behalf of Defendant Miguel Fimbres
9. The Order Denying Motion to Dismiss Indictment relating to Defendant Miguel Fimbres dated December 14, 2000 by Judge Miller
10. Defendant Miguel Fimbres' Plea Colloquy dated December 19, 2000
11. Defendant Miguel Fimbres' Presentence Report
12. Defendant Miguel Fimbres' Sentencing Memorandum dated March 1, 2000 as filed by Federal Defenders
13. The Memorandum Decision dated December 20, 2001

14. 1996 Voluntary Manslaughter Conviction Record
15. 2001 Deported Alien Conviction Record
16. Report by Agent Leslie Pino
17. Report by Agent Luis Ramos
18. Report by Park Ranger Jonathan Irwin
19. Superseding Information for Defendant Olivia Fimbres
20. Plea Agreement and Addendum for Defendant Olivia Fimbres

## VI

## PROPOSED VOIR DIRE

1. Of those of you who have sat on criminal juries, did any of those juries fail to reach a unanimous verdict?
2. Has anyone had an unpleasant experience with any law enforcement personnel?
3. Has anyone had any disputes with any agency of the United States Government?
4. Does anyone have relatives or close friends who have been investigated, arrested, accused or charged with a crime?
5. Does anyone have relatives or close friends who have been deported or removed?
6. Does anyone have strong feelings about the United States Border Patrol or any other federal agency involved in immigration issues?
7. Does anyone believe that immigration laws are too harsh?
8. Does anyone believe everyone should be allowed to enter the United States?
9. Does anyone believe that it should be legal to enter the United States without authorization?
10. Does everyone understand that as a juror your duty is to apply the law regardless of whether you disagree with it?
11. Does everyone understand that the laws of the United States equally apply to everyone who enters the United States?
12. Does everyone understand that as a juror you are not to consider prejudice, pity or sympathy in deciding whether the Defendant is guilty or not guilty?

13. Does anyone think that, regardless of the strength of the evidence, they will have trouble deciding whether the Defendant is guilty or not guilty?

14. Does anyone think they cannot decide whether a person is guilty or not guilty?

15. Does anyone have religious or moral beliefs which will make it difficult for them to make a decision strictly based on the law and facts of this case.

## VII

## JURY INSTRUCTIONS

The United States will submit proposed jury instructions under separate cover. The United States reserves the right to submit additional instructions at the Fed. R. Crim. P. 30 conference.

DATED: May 5, 2008.

    Respectfully submitted,

    KAREN P. HEWITT
    United States Attorney

    *s/Christopher M. Alexander*
    CHRISTOPHER M. ALEXANDER
    Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>         Plaintiff,<br>   v.<br>CESAR RICARDO FIMBRES-PEREZ (1),<br>         Defendant. | Criminal Case No.   08CR0021-DMS<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Trial Memorandum, together with statement of facts, memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1.  Michelle Betancourt, Esq.
    Atty for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 5, 2008.

*s/Christopher M. Alexander*
CHRISTOPHER M. ALEXANDER